# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3118

_____

Larry G. Jones,                                    *
                                                   *
       Plaintiff - Appellee,                   *
                                                   *    Appeal from the United States
     v.                                          *    District Court for the Eastern
                                                   *    District of Arkansas.
Mountaire Corporation Long Term                    *
Disability Plan; Prudential Insurance              *
Company of America,                                *
                                                   *
       Defendants - Appellants.                *

_____

Submitted:  April 18, 2008
Filed: September 11, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

      Plaintiff Larry G. Jones was a participant in a long-term disability plan (the "plan") provided by Mountaire Corporation ("Mountaire") and established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Mountaire's plan was insured by Prudential Insurance Company of America ("Prudential"), which was also the claims administrator. Jones filed for benefits under the plan. Prudential denied the claim, and Jones lost his two subsequent appeals. Jones then filed this action in the district court, which awarded him long term disability benefits. Mountaire and Prudential appeal, arguing that the

district court erred by (1) raising the issue of a different job database, the Occupational Information Network ("O*Net"),[1] for the first time in its order; (2) determining that Prudential inappropriately used the Dictionary of Occupational Titles (the "DOT")[2] to evaluate Jones's regular occupation under the plan; (3) reviewing de novo Prudential's decision; and (4) awarding benefits under the plan. We remand to the district court.

## I. Background

### A. The Long Term Disability Plan

Under the plan, a beneficiary is disabled and qualifies for benefits if Prudential determines that the beneficiary is unable to perform the material and substantial duties of his regular occupation due to sickness or injury. The plan defines regular occupation as the occupation the beneficiary routinely performed when his disability began. Prudential looks at the "occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." As the

---

[1]The O*Net "is a database of occupational requirements and worker attributes. It describes occupations in terms of the skills and knowledge required, how the work is performed, and typical work settings. It can be used by businesses, educators, job seekers, human resources professionals, and the publicly funded Workforce Investment System to help meet the talent needs of our competitive global economy." www.doleta.gov/programs/ONET/ (last visited Aug. 4, 2008).

[2]Employment and Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991). "The DOT was created by the Employment and Training Administration, and was last updated in 1991. It is included on the Office of Administrative Law Judges web site because it is a standard reference in several types of cases adjudicated by the office of Administrative Law Judges, especially labor-related immigration cases. *The DOT, however, has been replaced by the O*NET.*" www.oalj.dol.gov/LIBDOT.HTM (last visited Aug. 4, 2008).

-2-

claims administrator, Prudential has discretion to determine benefits eligibility under the plan.

## B. Jones's Medical History

Jones has had a myriad of health problems. In 1998, Jones had a triple by-pass, and in 2004, a stent was placed in his right coronary artery. In June 2005, Jones saw his primary care physician, Dr. Ransom (the "physician"), regarding chest pain. His chest x-ray showed bullous[3] emphysema. In July 2005, Jones underwent a hernia surgery. In September 2005, Jones visited his cardiologist, Dr. Henderson (the "cardiologist"), who noted in a report to the physician that Jones's heart was doing well and that its rhythm was regular. A September 2005 CT scan showed extensive emphysema throughout both lungs. In October 2005, a thoracic surgeon, Dr. Aguinaga (the "surgeon"), performed a cervical mediastinoscopy, bronchoscopy, thoracoscopy, and right upper lobe resection. The surgeon discovered severe bullous emphysema throughout Jones's right lung. A suspicious lesion in the right lung was benign.

## C. Prudential's Review for Disability Benefits

Jones worked for Mountaire as a sales representative, selling animal feed products. He promoted sales to dealers and feeders within a five-state region. His job included traveling frequently, attending trade shows, setting up displays for dealers, and conducting quarterly inventories. He also recommended proper feeds for animals, visited farms, and occasionally worked with large animals. His job required him to spend long hours on his feet, stoop, and lift and move inventory—up to fifty-pound bags of feed—in a dusty, dirty environment. Jones's last day at Mountaire was on September 30, 2005.

---

[3]A bulla is a fluid-filled blister that compresses functional lung tissue.

Jones filed a claim for long term disability benefits on November 2, 2005, and indicated his job was sedentary. Jones stated that he was unable to work because he had emphysema and could no longer work around dust and chemicals. Mountaire completed an employer statement, which also stated that Jones's job was sedentary.

In November 2005, the physician and surgeon filled out forms, certifying that Jones could not return to work. The physician stated that stress and physical exertion would increase Jones's breathing problems and that Jones was incapacitated and would likely worsen in the future. He diagnosed Jones with progressive chronic emphysema and coronary artery disease. The physician noted, however, that Jones had the functional ability to do sedentary work. The surgeon stated that due to progressive lung disease, Jones should not do physical labor or be exposed to chemical agents.

Prudential denied Jones's claim on December 20, 2005 based on the opinion of its nurse, Nurse Gillis, who reviewed Jones's medical records and found that the alleged disability lacked support. The nurse noted the lack of recent chest x-rays or pulmonary function tests to support the physician's assertion that breathing problems rendered Jones disabled and noted Jones was stable from a cardiac standpoint. Prudential explained that the medical records indicated no sudden worsening of his condition at the date of disability and that Jones previously had worked despite his condition.

Jones appealed the denial and submitted additional medical records. Jones's three treating doctors wrote letters stating that because of the combined effects of coronary artery disease and emphysema, Jones was incapable of returning to work. The cardiologist opined "that Mr. Jones is totally disabled for performing anything more than the most sedentary type occupation." The physician stated "that Mr. Jones is totally and permanently disabled to hold gainful employment." The physician also placed restrictions on Jones relating to standing, walking, lifting, climbing, balancing,

kneeling, crawling, and reaching overhead, as well as restrictions relating to exposure to gas, dust, fumes, or changes in temperature. The surgeon opined that Jones "is presently incapacitated and likely will remain so in the future."

Jones also submitted a job description showing that his job was not sedentary. The description indicated that Jones's duties included lifting up to fifty-pound bags of feed. Mountaire also added duties to the job description: visiting farms, handling large animals, and participating in quarterly inventories, which require standing, stooping, lifting, and moving inventory for hours in a dusty and dirty environment.

Prudential's rehabilitation specialist, Mr. Chretien, reviewed Jones's job description and determined his regular occupation as defined by the plan. The rehabilitation specialist concluded that it was "Sales Representative, Animal-Feed Products"[4] under the DOT. The DOT classified the job as light, which means the job includes the ability to exert up to twenty pounds of force occasionally and up to ten pounds of force frequently and to walk and stand for periods of time.

Prudential Medical Director Dr. Kowalski reviewed Jones's medical records and concluded that his medical history did not prevent Jones from doing a light-duty job. Prudential contacted Jones and asked if there was any supplemental information. In response, the surgeon submitted an office visit note dated November 2005. In it, the surgeon stated that Jones "has markedly improved from his [first visit post-surgery] although he continues to have pleuritic type right chest wall pain," "appears

---

[4]"272.357-010 SALES REPRESENTATIVE, ANIMAL-FEED PRODUCTS (wholesale tr.): Sells livestock- and poultry-feed products to farmers and retail establishments: Suggests feed changes to improve breeding of fowl and stock. Performs other duties as described under SALES REPRESENTATIVE (retail trade; wholesale tr.) Master Title. May specialize in selling feed supplements and be designated Sales Representative, Cattle-And-Poultry Feed Supplements (wholesale tr.). GOE: 08.02.01 Strength: L GED: R4 M3 L4 SVP: 6 DLU: 77." Employment and Training Admin., supra note 2, at 226 (emphasis omitted).

well and in no distress," and has rhythmic heart tones. Finally, the surgeon stated that the "chest x-ray today is satisfactory and showed marked resolution of his right upper lobe infiltrates noted earlier in June of this year." Prudential also contacted Jones to inquire about his heart treatment. Jones responded that his last stress test was prior to his last day at work and that he had not seen his cardiologist since his surgery in October 2005.

Prudential Claim Manager Mr. Furman summarized Jones's medical history and concluded that Jones could perform light work. The claim manager noted specifically that Jones's cardiologist reported that Jones had been doing well, that Jones made no reports of shortness of breath, and that no diagnostic test results supported a finding of an impairment. On March 3, 2006, Prudential notified Jones that he did not meet the plan's definition of disabled, based on Mountaire's job description and the DOT's definition of light work.

On March 16, 2006, Jones appealed again, requesting that Prudential look at Jones's actual job duties to make sure the chosen DOT job title accurately portrayed his work requirements. Jones noted that the DOT job description did not reflect that he was exposed to various chemicals, frequently stooped, kneeled, and crouched, and lifted up to fifty-pound bags of feed. Jones also requested an independent review by a third-party specialist. Jones included a copy of a treadmill stress test conducted earlier that month. The cardiologist's "final impression" was that Jones had a "fair to poor exercise tolerance." Jones also indicated he was having a breathing test performed that day. Jones lastly requested that Prudential contact Jones's treating doctors to receive a report on his physical abilities and limitations.

Prudential complied with Jones's requests. First, a second vocational rehabilitation specialist, Mr. Schwartzkopf, reviewed Jones's and Mountaire's job descriptions and found the chosen DOT job title was accurate even if it described less physical exertion than Jones's actual job. The second rehabilitation specialist noted

that Jones could share or delegate the heavier work if necessary. A Prudential medical director, Dr. Bachman, reviewed Jones's pulmonary function test ("PFT") and concluded that the results were "consistent with very mildly impaired PFT." After considering the treadmill test in addition to the other information, the medical director opined that Jones was in poor physical conditioning, had poor exercise tolerance, but was not impaired from performing his job as a result of his lung and heart conditions. Second, Prudential sent work status forms to Jones's primary care physician and surgeon. The surgeon indicated that Jones was no longer a patient. The physician reported that Jones could not drive, be exposed to gas, dust, or fumes, and could stand only one hour per day, due to his lung disease. Third, Prudential gave Jones's claim file to a third-party specialist, Dr. Brown, who was an internal medicine physician specializing in pulmonology, for an independent review. After reviewing the file, the third-party specialist stated Jones's tests results were on the lower limit of the normal range and showed no progression of worsening. He concluded Jones had no functional impairments and only "is limited by poor physical fitness." Ultimately, Prudential issued a final denial of benefits to Jones.

Jones, having exhausted his appeals with Prudential, filed this appeal in district court. See 29 U.S.C. § 1132(a)(1)(B) (authorizing a claimant to bring suit). The district court awarded long term disability benefits, after granting Jones's motion for summary judgment. The district court reviewed de novo Prudential's decision because the court determined that Prudential had a conflict of interest as insurer and claims administrator and because Prudential failed to examine all relevant facts. The district court found five procedural irregularities in the administrative record, including "a narrow and outdated application of the Department of Labor's occupational information." The district court criticized Prudential's vocational experts for relying on the DOT because it was last updated in 1977, was superceded by the O*Net, and did not give a detailed description of work environments. Further, the district court accused the experts of being "either unqualified or dishonest" because they failed to "keep abreast of the latest information." The district court

focused on Prudential's failure to consult the O*Net, which superceded the DOT and was more descriptive of Jones's work setting and job, categorized as "49005A Sales Representatives, Agricultural."[5]  The district court criticized Prudential for failing to reference the O*Net, which stated that Jones's work context involves frequent exposure to pollutants, gases, dust, and extremes in temperatures.  The district court noted that Jones repeatedly requested Prudential to review whether it had selected the proper job description title and repeatedly submitted evidence personally and from his treating doctors that he worked in a dusty environment, which adversely affected his breathing and lung condition.

## II.  Discussion

We review de novo the district court's grant of summary judgment to Jones. Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 869 (8th Cir. 2008).  A grant of summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 471 (8th Cir. 2008).  We review de novo the district court's determinations of law.  Id.

Prudential argues that the district court erred in raising the issue of the O*Net for the first time in its ruling and erred in determining that the use of the DOT was inappropriate.  We do not reach the issue of whether the district court properly used the O*Net because we find the district court erred by failing to give the parties an opportunity to brief the issues of the merits of and the differences between the two databases, and the reasons that Prudential used the DOT instead of the O*Net. Neither party had raised the use of the DOT versus the O*Net in its briefing of the appeal before the district court.  The district court, in its own research, identified the

---

[5]http://www.occupationalinfo.org/onet/49005a.html (last visited Aug. 4, 2008).

potential procedural irregularity. While we do not fault the district court for raising the issue, it should have offered the parties an opportunity to address the issue, rather than basing its ruling on an issue that neither party had identified or briefed.

We remand to the district court with instructions to allow the parties to brief the O*Net issue. We note that the district court may want to consider remanding the case to Prudential to reconsider Jones's application for disability benefits under the O*Net and its description of Jones's working environment. Cf. Sloan v. Hartford Life and Accident Ins. Co., 475 F.3d 999, 1007 (8th Cir. 2007)) (holding that the district court did not err by failing to remand the case to allow the claims administrator the first opportunity to calculate a financial offset because the administrator's contention regarding the offset had no legitimate basis); Chronister v. Baptist Health, 442 F.3d 648, 656 (8th Cir. 2006) (holding that the district court properly remanded the case to the claims administrator for further proceedings because the court rejected the administrator's sole reason for denying reinstatement of the claimant's disability benefits).

Prudential challenges the district court's determination that a de novo review applied to Prudential's denial of benefits, arguing that the district court should have reviewed the denial for abuse of discretion because Prudential had discretion whether to grant benefits. See Weidner v. Fed. Express Corp., 492 F.3d 925, 928 (8th Cir. 2007) (stating that the deferential abuse of discretion standard generally applies if a plan administrator has express discretion to interpret benefit provisions and to determine benefit eligibility). The Supreme Court has "address[ed] the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 105 (1989); see Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008). The Supreme Court held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" Firestone, 489

U.S. at 115 (quotation omitted).  We note that the Supreme Court recently clarified the law regarding the conflict of interest that arises when a claims administrator and an insurer of a plan are the same entity.  See Metro. Life, 128 S. Ct. at 2343.  In Metropolitan Life, the Supreme Court held that an entity that is both the claims administrator and payor of benefits has a conflict of interest.  Id. at 2348.  The Supreme Court stated that the standard of review of benefits determinations should be a "combination-of-factors method" where the conflict of interest serves "as a tiebreaker when the other factors are closely balanced" and is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important . . . where the administrator has taken active steps to reduce potential bias and to promote accuracy."  Id. at 2351.  We decline to apply this "combination-of-factors method" in the first instance and remand to the district court for reconsideration of the standard of review.

## III.  Conclusion

Accordingly, we reverse the district court's grant of summary judgment in favor of Jones and remand for further proceedings consistent with this opinion.

_____