**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1295

JOBIE LANCE,

Plaintiff - Appellant,

v.

RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  C. Weston Houck, Senior District
Judge.  (2:06-cv-03211-CWH)

Argued: March 25, 2009                     Decided: May 29, 2009

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and
David A. FABER, Senior United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.  Senior Judge Faber wrote the
opinion, in which Chief Judge Williams and Judge Wilkinson
joined.

**ARGUED:** Nathaniel W. Bax, FOSTER LAW FIRM, LLP, Greenville,
South Carolina, for Appellant.  Susan P. Dion, MCGUIREWOODS,
LLP, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Robert
E. Hoskins, FOSTER LAW FIRM, LLP, Greenville, South Carolina,
for Appellant.  Bruce M. Steen, MCGUIREWOODS, LLP, Charlotte,
North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FABER, Senior District Judge:

Jobie Lance appeals the district court's grant of judgment in favor of the Retirement Plan of International Paper Company with regard to the plan administrator's denial of Lance's claim for disability retirement benefits. For the reasons set forth below, we affirm.

I.

Appellant Jobie Lance ("Lance") is a former employee of International Paper Company ("IP"), where he worked for approximately thirty years as a process specialist. Lance, who has a vocational associate's degree in mechanical operation, previously served in the United States Army as a heavy equipment operator. Between 1982 and 2005, he also owned and operated two small businesses, one through which he installed and repaired home air conditioning units, and the other through which he repaired automobile air conditioners.

As an IP employee, Lance participated in the company's retirement plan ("the plan"), which included the provision of retirement disability benefits to qualified recipients suffering from a "disability," defined as follows:

> **"Disability"** or **"Disabled"** means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified

3

> by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled.

(JA 216.)

Benefits paid pursuant to the plan are provided by a separate trust. Although IP funds this trust, it has no access to the assets of the trust for its own purposes. The review and processing of disability claims under the plan is conducted by Sedgwick Claims Management Service ("Sedgwick"). Sedgwick, as plan administrator, is given discretionary power and authority to interpret the plan and determine benefit eligibility, among other responsibilities. (JA 195.)

Over the years, Lance developed neck and back problems as a result of a number of accidents. He suffered falls with resultant back injuries in 1993 and 1999, and was involved in a rear-end automobile collision in 2004. From 1993 through 2006, he underwent no fewer than four cervical fusions, and received steroid injections to his spine. His treating physician, George Khoury, M.D., diagnosed him with cervical and lumbar disc disease. These medical problems caused Lance to end his employment with IP on February 4, 2005.

In a letter to IP dated June 7, 2005, Dr. Khoury opined that Lance's cervical disc disease constituted a "permanent

4

partial disability" rendering him unable to return to his former position as a process specialist. (JA 102.) Dr. Khoury explained that Lance was, at that time, "undergoing a functional capacity evaluation to determine his exact level of functioning," and that the doctor would be able to make a statement after receiving the results of the evaluation. (Id.)

Lance completed a disability application form on March 16, 2006, listing the cause of his disability as surgery to his neck and a degenerating disc in his lower back resulting from a fall. (JA 26.) On the accompanying functional assessment form, Dr. Khoury gave Lance's condition as cervical and lumbar disc disease, with pain in the neck, arm, and lower back. (JA 33.) Dr. Khoury specifically concluded, however, that Lance was not "totally disabled," but rather only "partially disabled." (JA 34.) Moreover, the physician did not feel that Lance's condition was likely to be permanent. (Id.) Based on his review, Dr. Khoury determined that Lance had a "severe limitation of functional capacity," and was "capable of minimal (sedentary) activity."[1] (JA 36.)

---

[1] More particularly, Dr. Khoury determined that, during an eight-hour work day, Lance could stand or walk for three to five hours and could sit for the same period; that he could lift ten to twenty pounds, but only five pounds frequently; that he could grasp, push and pull, perform fine manipulation, and use his feet to operate foot controls; but that he was incapable of
(Continued)

5

Upon receipt of Lance's medical records, Sedgwick commissioned Richard A. Silver, M.D., a board-certified orthopedic surgeon, to perform an independent medical review of Lance's claim. (JA 77-80.) Dr. Silver's review led him to conclude that Lance's subjective complaints were not substantiated by objective clinical findings:

> The claimant has a solid fusion of his cervical spine with no documentation of any loss of functionality of cervical spine. There is no documentation of any loss of functionality of right or left upper extremity and there are no focal neurological deficits in the upper extremities.
>
> The claimant does have multilevel discogenic disc disease at L2-3, L3-4, L4-5, and L5-S1. The claimant has no documentation of any loss of functionality in the lumbosacral spine. The claimant has no documentation of any loss of functionality in the right or left lower extremity. The claimant is capable of being gainfully employed on a medical evidence based review of the medical records and being fit for full duty at medium work to medium-heavy work as delineated above.

(JA 78-79.)

In the course of Sedgwick's review of Lance's claim, his prior positions, both with IP and in his air conditioning and HVAC businesses, were evaluated by Zenia Andrews, JAS, to classify the level of exertion required. She reasoned that the process specialist position should be classified as "medium to

___

bending, stooping, climbing, or reaching above shoulder level. (JA 35.)

heavy duty to accommodate occasional lifting over 45 pounds." (JA 82.) His work in automobile air conditioning and HVAC repair was classified as "medium duty" work, however, as it necessitated the occasional exertion of 20 to 50 pounds of force, the frequent exertion of 10 to 25 pounds of force, or the constant exertion of up to 10 pounds of force to move objects. (Id.)

Because the medical evidence failed to indicate that Lance was unable to perform at the level required by his previous positions, both the disability specialist and the manager handling Lance's claim recommended denial of his request for benefits. (JA 87-88.) In a letter dated June 29, 2006, Sedgwick informed Lance of its determination that he did not meet the eligibility requirements for disability retirement benefits under the plan. (JA 90-93.) In accordance with Article XII, Section 12.07(a) of the plan, the letter included the reasons for denial and references to pertinent provisions of the plan on which the denial was based, as well as an explanation of the appeal procedure. (JA 90-93, 198.)

Lance appealed Sedgwick's decision by letter dated July 6, 2006, and included additional medical documentation in support of his claim. (JA 97.) Consequently, Sedgwick commissioned three additional physicians to perform independent medical reviews of Lance's claim. Each of these physicians essentially

7

opined that, excepting periods of recuperation after his back surgeries, Lance did not have a disability preventing him from returning to his prior positions. (JA 108-18.) On this basis, Sedgwick's disability retirement committee determined that the denial of benefits should be upheld. (JA 123.)

This action followed, with Lance filing suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, for a declaration of entitlement to benefits under the plan. In granting judgment in favor of appellee on February 28, 2008, the district court found "no evidence in the record which suggests that the Plan's denial of Lance's claim was unreasonable, contrary to the Plan's terms, or otherwise an abuse of discretion." (JA 421.) It is from this ruling that Lance appeals.

## II.

Where an ERISA plan confers upon its administrator discretionary authority in the exercise of its power, the administrator's denial of benefits is reviewed under an abuse-of-discretion standard. Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). Such a discretionary decision "will not be disturbed if reasonable, even if the court itself would have reached a different

8

conclusion." Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).

In weighing the reasonableness of the plan administrator's determination, the court considers the following factors, among others:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth, 201 F.3d at 342-43; Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008).

With respect to the eighth factor above, appellant argues that the United States Supreme Court's decision in Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008), which was issued subsequent to the district court's decision below, altered the standard of review such that remand to the district court is necessary. The Court in Glenn held that a plan administrator operates under a conflict of interest where it serves in the dual role of evaluating claims and also paying claims. Id. at 2346, 2348. Such a conflict of interest, however, does not change the standard of review in ERISA cases.

9

Rather, "when reviewing an ERISA plan administrator's discretionary determination, a court must review the determination for abuse of discretion and, in doing so, take the conflict of interest into account only as 'one factor among many' that is relevant in deciding whether the administrator abused its discretion." Champion, 550 F.3d at 358 (quoting Glenn, 128 S. Ct. at 2351).

Appellant's argument fails, in any case, because the plan at issue does not operate under a conflict of interest as contemplated by Glenn. As the district court correctly noted, "[b]ecause the Plan's benefits are funded by a separate trust to which International Paper does not have access for its own purposes, the Plan does not have significant incentives to benefit itself by denying benefits. Furthermore, the Plan has a separate claims administrator, Sedgwick." (JA 420.) To the extent this type of plan structure creates any conflict of interest on the part of its administrator, that conflict may be deemed of such little importance as to recede "to the vanishing point." See Glenn, 128 S. Ct. at 2351. See also De Nobel v. Vitro Corp., 885 F.2d 1180, 1191-92 (4th Cir. 1989).

It is more than evident that the other Booth factors, which were properly applied by the district court, weigh in favor of appellee. Under the plain language of the plan, Lance would only have been entitled to disability retirement benefits if

10

suffering from a medically determinable, permanent, total disability rendering him incapable of performing any occupation for which he is qualified. Even under the assessment of Dr. Khoury, upon whose diagnosis appellant depends, Lance's condition could be considered only partially disabling. Importantly, Dr. Khoury did not believe that Lance's condition was likely to be permanent, as required to receive benefits under the terms of the plan. Considering Dr. Khoury's opinion and the opinions of the four physicians it commissioned to review Lance's claim, Sedgwick's denial of benefits was entirely reasonable. Accordingly, the judgment of the district court is

AFFIRMED.