**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GLORIA WILLIAMS,

*Plaintiff-Appellee,*

v.

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellant.*

No. 09-1025

GLORIA WILLIAMS,

*Plaintiff-Appellee,*

v.

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellant,*

and

CINGULAR WIRELESS; ARTHUR FINCH; SHIRLEY BYRD; MARTINEZ JOHNSON,

*Defendants.*

No. 09-1568

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:07-cv-00074-D)

Argued: May 13, 2010

Decided: June 30, 2010

Before DUNCAN and KEENAN, Circuit Judges, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Duncan and Senior Judge Alarcón joined.

---

**COUNSEL**

**ARGUED:** Iole Ariadne Staples, METROPOLITAN LIFE INSURANCE COMPANY, New York, New York, for Appellant. Andrew O. Whiteman, HARTZELL & WHITEMAN, LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Stephen A. Dunn, EMANUEL & DUNN, PLLC, Raleigh, North Carolina, for Appellant.

---

**OPINION**

KEENAN, Circuit Judge:

In this consolidated appeal, we consider whether the district court erred in holding that an administrator of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, abused its discretion when the administrator terminated the plaintiff's long-term disability benefits. We also consider whether the district court abused its discretion by awarding attorneys' fees to the plaintiff. For the reasons stated below, we affirm.

I.

Plaintiff-Appellee Gloria Williams was employed by Cingular Wireless as a customer services clerk from Septem-

ber 2000 until the middle of 2003. In this capacity, Williams' daily responsibilities consisted primarily of speaking with customers on the telephone and typing data into a computer. Williams enrolled in Cingular's insurance plan (the plan), which was issued by Defendant-Appellant Metropolitan Life Insurance Company (MetLife). The plan includes both short-term disability benefits and long-term disability benefits. MetLife, as the claims administrator, serves in the dual role of evaluating benefit claims and paying approved claims. The terms of the plan grant MetLife the discretionary authority to interpret the plan and to determine benefit eligibility.

In the middle of the 1990s, Williams began suffering from medical issues with her hands and wrists, and was diagnosed with "trigger finger" disorder,[1] tendinitis, and carpel tunnel syndrome. Williams has had nine medical procedures to treat these conditions, including six operations to treat her trigger finger disorder, one operation to remove infected tissue resulting from the surgeries to relieve her trigger finger condition, and two procedures to address her carpel tunnel syndrome. According to Williams and her treating physicians, these conditions made it very difficult for Williams to use her hands without experiencing severe pain for work activities such as typing on a computer.

---

[1]The medical treatise *Gray's Anatomy* defines "trigger finger" as a condition that

> affects the fibrous flexor sheaths of the fingers or thumb within the palm. The affected sheath thickens and entraps the contained tendons, which become constricted at the site of entrapment . . . . The finger now snaps as the tendon nodule passes through the constriction on flexing the finger. The corresponding extensor muscle is insufficiently powerful to extend the affected finger. The patient does this passively, accompanied by a painful snap. Treatment frequently requires surgical division of the A1 pulley of the flexor sheath to relieve the stricture.

*Gray's Anatomy: The Anatomical Basis of Clinical Practice* 879 (Susan Standring ed., 40th ed. 2008).

In April 2003, Williams left work due to these conditions and filed a claim with MetLife for short-term disability benefits. MetLife approved short-term disability benefits for a five-week period but then terminated those benefits, at which point Williams returned to work. About this time, Williams also was being treated for neck and back pain.

After returning to her job, Williams worked for about one week before leaving work again. MetLife renewed Williams' short-term disability benefits after her doctor advised her to "avoid repetitive[ ] computer work and hand use." Williams' short-term disability benefits lapsed in September 2003, after one of her physicians concluded that she was able to return to her job on a reduced schedule. Williams returned to her job for one day, and worked for about four hours before stopping because she was unable to perform her job duties without severe pain.

After leaving work, Williams again applied for short-term disability benefits. MetLife approved short-term disability benefits for Williams through October 30, 2003, which was the maximum period allowable for those benefits under the plan. MetLife then referred Williams' claim for consideration for long-term disability benefits. MetLife approved long-term disability benefits for Williams in December 2003.

For about the next 18 months, Williams continued to experience neck, back, and hand pain. During this period, MetLife periodically requested and reviewed Williams' medical records, informing her in February and March of 2005 that her long-term disability benefits would continue.

In August 2005, MetLife terminated Williams' long-term disability benefits. MetLife sent Williams a letter explaining that it was terminating her long-term disability benefits "because medical documents do not substantiate [her] inability to perform [her] customary occupation." In support of its decision, MetLife appeared to rely on a report from Dr. Carl L.

Smith, one of Williams' treating physicians, reflecting Williams' April 1, 2005 visit with Dr. Smith. Dr. Smith's report related Williams' statements that she was having "good and bad days," and that her pain averaged a three on a ten-point scale. Dr. Smith's report did not specifically address Williams' hand and wrist pain, nor did the report conclude that Williams was able to return to work.

After MetLife's termination of her long-term disability benefits in August 2005, Williams exercised her appeal rights under the plan in September 2005 and submitted additional medical evaluations in support of her appeal. MetLife referred Williams' file to Dr. John D. Thomas II, an independent Certified Disability Evaluator and board-certified physical medicine and rehabilitation specialist, and to Dr. Lee Becker, an independent physician consultant and certified psychiatry specialist.

Dr. Thomas reviewed the information in Williams' file at the time of the initial denial of benefits, as well as updated information submitted after that denial. Dr. Thomas' analysis focused on Williams' medical issues with her neck and back. With regard to Williams' medical issues with her hands and wrists, Dr. Thomas' concluded that:

> Certainly . . . there is ample medical record support for inability to use the hands, over time, during the 90s and again in the early 2000s, these issues appear to retreat with a 05/28/03 C-spine MRI. . . . It is not clear to me how these findings correlate with Ms. Williams' complaints on exam. It does not appear that any of her providers really lined the clinical picture up well.

Dr. Thomas issued a report on September 22, 2005, agreeing with MetLife's determination that the medical information in Williams' file did not show that Williams was unable to work after August 9, 2005. Similarly, Dr. Becker concluded on

September 19, 2005 that from a psychiatric perspective, the information in Williams' file did not support an inability to perform her job duties after August 9, 2005.

In October 2005, after Dr. Thomas and Dr. Becker concluded that Williams' file did not substantiate her asserted inability to function at work, MetLife upheld its decision terminating Williams' long-term disability benefits. In its letter to Williams informing her of this decision, MetLife stated that the information in her claim file "[did] not support the existence of a totally disabling condition severe enough to keep [her] from performing [her] customary occupation as of August 9, 2005." As evidenced by this letter, MetLife's review focused on the medical records relating to Williams' neck and shoulder trouble, while failing to address in substance Williams' well-documented problems with her hands and wrists.

Although this decision exhausted Williams' appeal rights under the plan, MetLife received and reviewed additional medical information that Williams submitted in the months that followed. MetLife sent this additional information to Dr. Thomas, who issued a supplemental report on November 21, 2005 restating his previous conclusion. In his supplemental report, Dr. Thomas expressly "recognize[d] a number of upper extremity surgeries being done over time" and noted Williams' "complain[ts] of neck pain, hand and wrist numbness." Nevertheless, Dr. Thomas concluded that "[t]he interval records reviewed do not clearly explain physical impairments/physical findings which would preclude sedentary-duty work activities or function at a sedentary-duty level." By letter dated November 29, 2005, MetLife informed Williams that it was upholding its prior decision to terminate Williams' long-term disability benefits.

Williams later submitted additional information to MetLife, including a December 2005 report from her physician, Dr. Gary Kaplowitz, in which Dr. Kaplowitz concluded that Wil-

liams "is significantly disabled," and that "[i]t is impossible for [Williams] to do any kind of repetitive work with the right hand." Williams also sent MetLife a September 2005 report from Dr. Smith. In this report, Dr. Smith stated that Williams "no longer can deal with computers because of her hand pain," and concluded that Williams' "pain continues to bother her significantly. She has limited use of the hands. She is not able to return back to her prior occupation as a customer service rep [sic] at all. Hence, she is totally disabled from her prior occupation."[2]

MetLife again sent these additional medical records to Dr. Thomas, who issued a report on January 10, 2006 restating his prior conclusion that Williams' medical records did not substantiate an inability to work after August 9, 2005. In this report, Dr. Thomas dismissed Dr. Smith's September 2005 report, finding it "without significant objective findings precluding sedentary duty function ability." Dr. Thomas also summarily dismissed Dr. Kaplowitz's December 2005 report, which concluded that Williams was significantly disabled and unable to return to work. Based on Dr. Thomas' conclusions, MetLife informed Williams by letter dated January 24, 2006 that MetLife was again upholding its decision to terminate Williams' long-term disability benefits.

Williams submitted further medical information to MetLife in May 2006. MetLife reviewed this additional information but again informed Williams, by letter dated September 19, 2006, that MetLife's decision to terminate Williams' long-term disability benefits was sustained.

After receiving this letter from MetLife, Williams filed the present lawsuit against MetLife in the Eastern District of

---

[2]Dr. Smith concluded previously in March 2005 that Williams was not able to return to her work as a customer services representative, due in part to Williams' medical issues with her hands. This information was included with MetLife's previous reviews of Williams' medical file.

North Carolina. Thereafter, Williams and MetLife each filed motions for summary judgment. Upon its review of the administrative record, the district court, in a published opinion, entered final judgment granting Williams' motion and denying MetLife's motion. *Williams v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 525 (E.D.N.C. 2008).

In its opinion, the district court noted that MetLife had a conflict of interest with regard to the plan because MetLife served in the dual role of evaluating claims for benefits and paying those claims. Based on this "structural" conflict, the district court applied the "modified abuse-of-discretion" standard that was applicable in this Circuit at the time of the district court's order. Referencing this standard, the district court stated,

> In assessing the reasonableness of MetLife's decision, the court requires that MetLife's decision be *more* objectively reasonable and supported by *more* substantial evidence (as compared to when no conflict of interest exists). . . .

*Id.* at 539 (emphasis added).

The district court held in Williams' favor because MetLife's analysis did not adequately account for the medical evidence regarding Williams' inability to use her hands in performing her occupation as a customer service clerk. Thus, according to the district court, MetLife's decision was not reasonable and was not supported by substantial evidence.

The district court directed MetLife to award Williams long-term disability benefits for the period between April 7, 2003 and April 6, 2006, and directed that MetLife determine Williams' eligibility for long-term disability benefits beginning from April 7, 2006 to the present. The district court also invited Williams to submit a request for attorneys' fees and costs, which she did. After receiving briefing by the parties,

the district court awarded Williams attorneys' fees in the amount of $18,240.00 and $350.00 in costs. MetLife timely appealed the district court's order granting Williams' summary judgment motion and the court's order awarding attorneys' fees and costs.

## II.

### A.

In an appeal under ERISA, we review a district court's decision de novo, employing the same standards governing the district court's review of the plan administrator's decision. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 360 (4th Cir. 2008). When, as here, an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion. *Id.* at 359; *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).

Under the abuse-of-discretion standard, we will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently. *Ellis*, 126 F.3d at 232. Thus, we may not substitute our own judgment in place of the judgment of the plan administrator. *See Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985). To be held reasonable, the administrator's decision must result from a "deliberate, principled reasoning process" and be supported by substantial evidence. *Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long-term Disability Plan*, 509 F.3d 644, 651 (4th Cir. 2007); *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).

In our decision in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), we set forth eight nonexclusive factors that courts should con-

sider in reviewing the reasonableness of a plan administrator's decision. These factors include:

> (1) the language of the plan;
>
> (2) the purposes and goals of the plan;
>
> (3) the adequacy of the materials considered to make the decision and the degree to which they support it;
>
> (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;
>
> (5) whether the decisionmaking process was reasoned and principled;
>
> (6) whether the decision was consistent with the procedural and substantive requirements of ERISA;
>
> (7) any external standard relevant to the exercise of discretion; and
>
> (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43. The above factors continue to guide our abuse-of-discretion review under ERISA. *See Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 261 (4th Cir. 2009); *Champion*, 550 F.3d at 359.

Before the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008), courts in this Circuit reviewing a plan administrator's decision applied a "modified abuse-of-discretion" standard. *See Ellis*, 126 F.3d at 233. Under this prior standard, if a plan administrator had a conflict of interest because the administrator both determined benefit eligibility and paid claims, the administra-

tor's decision was given less deference than if the administrator had no conflict of this nature. In applying that prior standard, we noted that such a conflict would modify the abuse-of-discretion standard according to a "sliding scale," requiring greater objective reasonableness and more substantial evidence in support of a decision depending on the degree of the administrator's financial incentive to benefit itself by reaching a certain outcome. *See id.*; *see also*, *e.g.*, *Guthrie*, 509 F.3d at 649-52 (applying "sliding scale" modified abuse-of-discretion analysis); *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007) (same); *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 307-11 (4th Cir. 2004) (same).

This line of cases, however, predated *Glenn*, in which the Supreme Court established the framework of review for ERISA cases in which a plan administrator has a structural conflict of interest. Addressing the different standards of review employed by some of the circuit courts, the Supreme Court clarified that the presence of a plan administrator's conflict of interest did not alter the abuse-of-discretion standard of review. Instead, the Court explained, the presence of such a conflict is "but one factor among many that a reviewing judge must take into account." 554 U.S. at ___; 128 S. Ct. at 2351. In particular, the Supreme Court counseled that the conflict of interest should not itself lead to "special burden-of-proof rules, or other special procedural or evidentiary rules." *Id.*

Although the district court in the present case was aware of the Supreme Court's holding in *Glenn*, the district court did not have the benefit of our opinion in *Champion*, decided two weeks after the district court entered its order. In *Champion*, we first substantively addressed the impact of *Glenn* on our prior "modified abuse-of-discretion" standard. We observed that the decision in *Glenn* required a change in our prior standard for reviewing discretionary decisions made by ERISA

administrators operating under a structural conflict of interest. *Champion*, 550 F.3d at 358-59.

We concluded that, based on the holding in *Glenn*, our prior modified abuse-of-discretion standard no longer was applicable. *Id.* at 359. We held that, instead, courts should view any such conflict of interest as but one factor among the many identified in *Booth* for reviewing the reasonableness of a plan administrator's discretionary decision. *Id.* at 359. We explained that "courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by [the] administrator, even if the administrator operated under a conflict of interest." *Id.* With this framework in mind, we address the arguments presented in this appeal.

B.

MetLife argues that the district court applied an incorrect legal standard, and that application of the correct standard mandates the conclusion that MetLife did not abuse its discretion in terminating Williams' long-term disability benefits. We disagree with the conclusion advanced by MetLife.

After citing the decision in *Glenn*, the district court stated that the effect of MetLife's conflict was reduced because MetLife sought review of its decision by two physician-consultants and initially awarded Williams long-term disability benefits through August 2005. Nevertheless, the district court stated that it was applying the modified abuse-of-discretion standard, and announced that because of the conflict of interest present in this case, MetLife's decision to terminate Williams' benefits must be "*more* objectively reasonable and supported by *more* substantial evidence" than if there were no conflict. *Williams*, 632 F. Supp. 2d at 539 (emphasis added).

Because the district court applied the modified abuse-of-discretion standard that we abrogated in *Champion*, as

required by the decision in *Glenn*, we first must decide whether we should reach the merits of MetLife's appeal or instead remand the case to the district court for application of the correct legal standard. We conclude that a remand is not necessary in this case.

In the context of ERISA, this Court and the district court each conduct the same de novo review to determine whether a plan administrator abused its discretion. *See Champion*, 550 F.3d at 360. Both this Court and the district court conduct these respective reviews based solely on the existing administrative record, rather than on any testimony or other additional evidence obtained outside the administrative record. Thus, we are equally situated to the district court in our ability to examine the administrative record and to apply the facts to the proper legal standard.[3]

Our decision to proceed directly to review de novo the record before us is further supported by our decisions after *Champion* in which we considered appeals based on ERISA. Since the decision in *Champion*, in the five ERISA cases that have come before us in which the district court applied the pre-*Champion* standard, we have reached the merits of each such case rather than remanding the matter to the district court. *See Carden*, 559 F.3d at 261-63 (affirming district court order upholding plan administrator's offset of workers compensation benefits); *Vaughan v. Celanese Americas Corp.*, 339 F. App'x 320 (4th Cir. July 30, 2009) (unpublished) (affirming district court decision upholding plan administrator's denial of separation pay benefits); *Spry v. Eaton Corp. Long Term Disability Plan*, 326 F. App'x 674 (4th Cir. June 2, 2009) (unpublished) (reversing district court decision in favor of beneficiary); *Lance v. Ret. Plan of Int'l Paper Co.*, 331 F. App'x 251 (4th Cir. May 29, 2009) (unpublished) (affirming district court decision upholding plan administra-

---

[3]We also note that neither party asks us to remand this case to the district court for application of the correct legal standard.

tor's denial of benefits); *White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713 (4th Cir. Jan. 21 2009) (unpublished) (affirming district court decision in favor of beneficiary).[4] We also note that a review of ERISA cases from our sister circuits shows that other courts of appeal often have reached the merits of cases in which a district court initially applied a pre-*Glenn* standard.[5]

## C.

We turn now to apply the *Champion* standard to the facts of this case, employing the factors set forth in *Booth*. We hold that because MetLife serves in the dual role of evaluating claims for benefits and of paying benefit claims, MetLife has a structural conflict of interest. *See Glenn*, 554 U.S. at ___; 128 S.Ct. at 2348. We observe, however, that MetLife's structural conflict of interest should not have a significant role in

---

[4]Our decision to apply the correct legal standard instead of remanding the case is also consistent with *Glenn*, in which the Supreme Court affirmed the Sixth Circuit's decision in favor of a benefit plan participant (the plaintiff), over Justice Kennedy's separate opinion urging the Court to remand the case for application of the clarified standard. *See* 554 U.S. at ___, 128 S.Ct. at 2355-56. Further, our decision is consistent with *Champion*, in which this Court applied the new standard in affirming the district court's decision.

[5]*See*, *e.g.*, *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008); *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240 (5th Cir. 2009); *Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773 (8th Cir. 2009); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009); *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187 (10th Cir. 2009); *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008). We observe, however, that a few decisions from our sister circuits have remanded reviews under ERISA to the district court for application of the post-*Glenn* legal standard. *See*, *e.g.*, *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1 (1st Cir. 2009); *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444 (7th Cir. 2009); *Jones v. Mountaire Corp. Long Term Disability Plan*, 542 F.3d 234 (8th Cir. 2008); *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016 (9th Cir. 2008).

the analysis. The district court correctly concluded that MetLife's initial finding of disability, its payment of long-term disability benefits for almost two years, and its referral of its termination decision to two independent doctors, suggests that MetLife was not inherently biased in making its decision.

Nevertheless, we agree with Williams that MetLife's decision is not supported by substantial evidence. Under the terms of the Plan, a person is "disabled" and eligible for long-term disability benefits if she is unable to earn a certain percentage of her pre-disability earnings due to an "inability to perform all of the duties of [her] Customary Occupation." Williams' "[c]ustomary [o]ccupation" is as a customer service clerk, a position that requires frequent typing on a computer, which in turn requires Williams to make frequent use of her hands and wrists.

Williams' claims file contained overwhelming evidence reflecting significant problems with her hands and wrists, including tendonitis, carpel tunnel syndrome, and trigger finger disorder. We again note that Williams has had nine medical procedures to treat these conditions. Despite these numerous procedures, the described hand and wrist impairments have continued to cause Williams pain and have become a significant impediment to Williams' ability to type on a computer.

The district court characterized the record reflecting Williams' issues with her hands and wrists as "credible, objective medical evidence." 632 F. Supp. 2d at 540. We agree with this conclusion. Indeed, Williams' physicians repeatedly concluded that Williams should not return to work, or required a modification of job duties, due in part to the pain in her hands and her inability to type on a computer. MetLife itself noted in December 2003 that Williams "is unable to turn her head and use her hands for extend[ed] periods of time due to the pain."

Although Williams' neck and shoulder pain showed signs of improvement, the evidence in the administrative record does not show that Williams' medical issues with her hands and wrists subsided. Nonetheless, following Williams' April 2005 appointment with Dr. Smith, in which Williams reported generally that her pain recently had improved, MetLife terminated Williams' long-term disability benefits in August 2005. As noted, this termination followed several occasions, as recently as five months prior, in which MetLife reviewed and approved Williams' long-term disability benefits. The report from Williams' April 2005 doctor's visit was the only new information since MetLife's most recent approval of Williams' long-term disability benefits that MetLife could have considered in deciding abruptly to terminate those benefits.

After reviewing the evidence in the administrative record, we conclude that even under the deferential standard of review prescribed by *Glenn* and *Champion*, MetLife's rationale in terminating Williams' benefits was not reasoned and principled, and was not supported by substantial evidence. MetLife's initial termination letter simply does not address evidence from Williams' treating physicians concerning Williams' inability to use her hands to conduct the typing and other activities required by her customary occupation. We emphasize that Dr. Smith's April 2005 report, on which MetLife initially relied in terminating Williams' benefits, does not explicitly address Williams' ability to use her hands, nor does that report conclude that Williams could return to work.

Moreover, we agree with the district court that Dr. Thomas concluded inaccurately that Williams' inability to use her hands "appear[s] to retreat with a 5/28/03 [C]-spine MRI." The record evidences numerous instances in which Williams experienced pain and difficulty in attempting to use her hands after May 2003. Additionally, we conclude that Dr. Thomas' statement regarding whether Williams' "providers really lined the clinical picture up well," is vague and fails to provide any

information of substance regarding Williams' documented problems with her hands and wrists.

In the face of overwhelming evidence concerning Williams' continued pain and difficulty in attempting to use her hands and wrists, MetLife relied on a scintilla of evidence that did not directly address these problems. MetLife appears to have disregarded, without justification, Williams' treating physicians' conclusions regarding her hand and wrist pain and its effect on her ability to type throughout the day. As the Supreme Court has held, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). For these reasons, we agree with the district court that MetLife's decision to terminate Williams' long-term disability benefits for the applicable period was an abuse of discretion.

### III.

### A.

MetLife also appeals from the district court's order awarding Williams attorneys' fees of $18,240, and costs in the amount of $350.00. In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "'some degree of success on the merits.'" *Hardt v. Reliance Std. Life Ins. Co.*, No. 09-448, ___ U.S. ___, ___ S.Ct. ___, slip op. at 1, 12 (May 24, 2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

We review a district court's award of attorneys' fees to a qualifying litigant to determine whether the court has abused its discretion. *Mid Atl. Med. Servs., LLC v. Sereboff,* 407 F.3d 212, 221 (4th Cir. 2005). The district court's factual findings in support of such an award are reviewed for clear error. *Car-*

*olina Care Plan, Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006), *overruled on other grounds by Champion*, 550 F.3d 353; *Hyatt v. Shalala*, 6 F.3d 250, 255 (4th Cir. 1993).

We observe that the Supreme Court issued its decision in *Hardt* after we heard oral argument on the present appeal. We conclude that the holding in *Hardt* requires us to change our analytical approach to the review of an attorneys' fees award in an ERISA case.

Before the decision in *Hardt*, the rule in this Circuit was that only a "prevailing party" was eligible for an award of attorneys' fees in an action under ERISA. *See Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). In *Hardt*, the Supreme Court expressly rejected our "prevailing party" requirement. ___ U.S. at ___, slip. op. at 9. The Supreme Court held that a party is eligible for an attorneys' fees award in an ERISA case if the party has achieved "some degree of success on the merits." ___ U.S. at ___, slip. op. at 1, 12. Thus, under the Supreme Court's decision in *Hardt*, the category of litigants eligible for an attorneys' fees award in an ERISA action is broader than under our prior standard.

The first step of our analysis, therefore, requires us to consider whether Williams achieved "some degree of success on the merits" in the district court, thereby making her eligible for an award of attorneys' fees. We have no difficulty in concluding that Williams did show "some degree of success on the merits." In fact, the degree of her success was very high, as shown by the district court's grant of Williams' motion for summary judgment and the district court's holding that Williams was entitled to long-term disability benefits. Therefore, we conclude that Williams was eligible for an award of attorneys' fees under the *Hardt* standard.

### B.

Because Williams was eligible for an award of attorneys' fees under the decision in *Hardt*, we proceed to the second

step of our analysis, in which we determine whether the district court properly exercised its discretion in holding that Williams should be awarded attorneys' fees. We note at the outset that even a successful party such as Williams does not enjoy a presumption in favor of an attorneys' fees award. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc).

We identified five factors in *Quesinberry* that a district court should consider in informing its exercise of discretion when ruling on a motion for attorneys' fees in an ERISA case. *Id.* at 1029. As we stated in *Quesinberry*, these factors include:

> (1) degree of opposing parties' culpability or bad faith;

> (2) ability of opposing parties to satisfy an award of attorneys' fees;

> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

> (5) the relative merits of the parties' positions.

987 F.2d at 1029. We cautioned that this five-factor approach is not a "rigid test," but instead provides "general guidelines." *Id.*

We observe that the Supreme Court's decision in *Hardt* does not preclude our continued use of the five-factor approach that we established in *Quesinberry*. The Supreme

Court simply cautioned against employing these five factors in the first step of the analysis, namely, in determining whether a party has satisfied the requirement of achieving "some degree of success on the merits." *Hardt*, ___ U.S. at ___ (slip. op. at 11). However, with regard to the second step of the analysis involving review of a district court's discretionary decision whether to award attorneys' fees, the Court stated that "[w]e do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals" in *Quesinberry* in deciding whether to award attorneys' fees. *Hardt*, ___ U.S. at ___, slip. op. at 12 n.8. Therefore, we conclude that once a court in this Circuit determines that a litigant in an ERISA case has achieved "some degree of success on the merits," the court should continue to apply the general guidelines that we identified in *Quesinberry* when exercising its discretion to award attorneys' fees to an eligible party.

In this case, the district court applied the *Quesinberry* factors and concluded that MetLife's culpability in terminating Williams' benefits weighed in favor of granting Williams' request for attorneys' fees. The district court observed that MetLife terminated Williams' long-term disability benefits based on a single piece of evidence after having approved long-term disability benefits three times previously. The district court also found that MetLife failed to consider all the documented evidence concerning Williams' disability and improperly relied on Dr. Thomas' "flawed" reports. Although the district court did not expressly state that MetLife's actions amounted to "bad faith," the court characterized MetLife as having been "more than merely negligent."

The district court further found that three of the other four *Quesinberry* factors, including the parties' ability to satisfy an award of fees, whether an award of attorneys' fees would deter other persons acting under similar circumstances, and the relative merits of the parties' positions, supported such an

award. After reviewing the record and the parties' arguments, we conclude that the district court did not clearly err in making these factual findings, nor did the court's evaluation of these findings under the *Quesinberry* factors and its award of attorneys' fees constitute an abuse of discretion.[6]

Our conclusion is not altered by MetLife's additional argument that the district court erred by considering whether Williams could pay her attorney under the "ability to pay" factor of *Quesinberry*, rather than solely on whether MetLife could satisfy an award of attorneys' fees. This argument is not persuasive.

First, the district court did not rely strongly on Williams' inability to pay, and MetLife's argument to the contrary is not supported by the record. Second, as noted previously, the approach we adopted in *Quesinberry* provides "general guidelines" rather than a "rigid test." *See* 987 F.2d at 1029.

Finally, in exercising its discretion under the statute, the district court was entitled to consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts. *See Quesinberry*, 987 F.2d at 1030 (noting district courts should consider remedial purposes of ERISA in exercising discretion to award attorneys' fees); *Denzler v. Questech, Inc.*, 80 F.3d 97, 104 (4th Cir. 1996) (describing remedial purposes of ERISA). The district court's decision to consider Williams' ability to pay attorneys' fees in the court's analysis under *Quesinberry* comports with these remedial purposes. We therefore conclude that a plaintiff's ability to pay attorneys' fees may be considered by the district court in its exercise of its discretion under *Quesinberry*, and that the district court did not err or abuse its discretion in awarding attorneys' fees to Williams.

---

[6]MetLife does not argue on appeal that the district court erred in calculating the amount of attorneys' fees awarded to Williams.

C.

We reach the same conclusion regarding the district court's decision to award costs to Williams.[7] Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs "should be allowed to the prevailing party" unless a federal statute provides otherwise. Thus, we have stated that Rule 54 gives rise to a presumption in favor of an award of costs to the prevailing party. *Teague v. Baker*, 35 F.3d 978, 996 (4th Cir. 1994). Here, Williams was the "prevailing party." Further, ERISA expressly permits a district court to award costs in the court's discretion, but the statute does not alter the general rule in favor of awarding costs to prevailing parties such as Williams. *See* 29 U.S.C. § 1132(g)(1). Thus, Williams is entitled to a presumption in favor of costs.

With this presumption in mind, we review a district court's award of costs for abuse of discretion. *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990). In light of our conclusion regarding the district court's award of reasonable attorneys' fees to Williams, we easily conclude that the district court did not abuse its discretion in awarding costs to Williams.

IV.

Although the district court applied a legal standard that this Court later abrogated in *Champion*, we agree with the district court's ultimate conclusion that MetLife abused its discretion by terminating Williams' long-term disability benefits. We also uphold the district court's order awarding Williams attorneys' fees and costs. The judgment of the district court is affirmed.

*AFFIRMED*

---

[7]We observe that MetLife's argument on appeal does not differentiate between the district court's award of attorneys' fees and the court's award of costs.