UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-2493**

---

SHERRI THOMAS,

       Plaintiff - Appellant,

   v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

       Defendant - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:12-cv-00973-PJM)

---

Submitted: June 7, 2013            Decided: July 30, 2013

---

Before WILKINSON and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

Gerald I. Holtz, LAW OFFICES OF GERALD I. HOLTZ, LLC, Rockville, Maryland, for Appellant. Jeaneen J. Johnson, Colleen K. O'Brien, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sherri Thomas (Plaintiff) appeals the district court's grant of summary judgment in favor of United of Omaha Life Insurance Company (United of Omaha) with respect to her claim for accidental death benefits under an insurance policy (the Policy) issued by United of Omaha. We affirm.

I.

On February 12, 2010, Plaintiff's husband, Duane Middleton (Middleton), underwent a partial colonoscopy during which the cecum of his colon was unintentionally perforated, resulting in his death approximately seven hours later.[*] Plaintiff, the named beneficiary under the Policy, subsequently filed a claim with United of Omaha for $67,000.00 in accidental death benefits under the Policy. The parties do not dispute that the Policy is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

Under the section of the Policy entitled "ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS," the Policy provides that United of Omaha will pay the "Loss of Life" benefit if Middleton was "injured as a result of an Accident, and that Injury is

_____

[*] The colonoscopy was aborted prior to its completion due to suboptimal bowel preparation by Middleton.

- 2 -

independent of Sickness and all other causes . . . ." (J.A. 47). In relevant part, the Policy specifically defines the term "Accident" for purposes of this provision as:

> a sudden, unexpected and unintended event, independent of Sickness and all other causes. Accident does not include Sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, bacterial or viral infection, regardless of how contracted.

(J.A. 47).

Under the Policy, United of Omaha possesses "the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (J.A. 87). Moreover, "[b]enefits under the Policy will be paid only if [United of Omaha] decide[s], after exercising [its] discretion, that the Insured Person is entitled to them," and "[i]n making any decision, [United of Omaha] may rely on the accuracy and completeness of any information furnished by the Policyholder, an Insured Person or any other third parties." Id.

The administrative record that United of Omaha had before it in making its final decision regarding whether to pay or deny Plaintiff's claim for accidental death benefits under the Policy, included, inter alia: (1) the amended death certificate for Plaintiff's husband, issued by the State of Maryland; (2) the Post Mortem Examination Report prepared by Assistant Medical Examiner Victor Weedn, M.D., for the Office of the Chief Medical Examiner for the State of Maryland; (3) the private autopsy

- 3 -

report prepared by Allen Burke, M.D.; (4) Middleton's medical records from the Montgomery Endoscopy Center where he underwent the colonoscopy; and (5) the professional opinion of United of Omaha's Medical Director, Thomas Reeder, M.D., regarding the cause of Middleton's death, following his review of the claim file.

The amended death certificate for Middleton listed the manner of death as an accident and the cause of death as acute peritonitis due to (or as a consequence of) perforation of the cecum during a colonoscopy, with hepatitis C, cirrhosis of the liver, hypertension, and chronic renal insufficiency as other significant conditions contributing to his death.

In the Post Mortem Examination Report prepared by Dr. Weedn (Dr. Weedn's Report), Dr. Weedn concludes that Middleton died of acute peritonitis due to perforation of the cecum during a colonoscopy. He further concludes that hepatitis C, cirrhosis of the liver, hypertension, and chronic renal insufficiency also contributed to Middleton's death. Of particular relevance to the present appeal, Dr. Weedn's Report states that Middleton, at the time of his death, was on a liver transplant list, and that he underwent the colonoscopy as part of his workup for an anticipated liver transplant due to a family history of colon cancer. Dr. Weedn learned this information from his first-hand review of Middleton's medical records, including records from:

(1) Shady Grove Adventist Hospital (emergency services); (2) Dr. Mikhail (primary care physician); (3) Dr. David Doman (the gastroenterologist who performed the colonoscopy at issue); (4) Dr. Mark Sulkowski (infectious disease, internal medicine); and (5) Dr. Alan Kravitz (surgeon). According to Dr. Weedn's Report, "[t]he manner of [Middleton's] death is ACCIDENT." (J.A. 134).

In the private autopsy report prepared by Dr. Burke, Dr. Burke lists Middleton's immediate cause of death as cecal perforation with submucosal hemorrhage and early acute peritonitis.

The colonoscopy procedure report prepared by Dr. Doman lists "Screening\family history colon cancer" as the preoperative diagnosis. (J.A. 114).

After reviewing the medical documents in the claim file, Dr. Reeder, United of Omaha's Medical Director, opined as follows in writing:

This seems very straightforward.

He underwent screening colonoscopy to look for colon pathology in preparation for liver transplantation. Bowel preparation was poor and the cecum was perforated as a result of this medical/surgical procedure. There was no evidence of underlying colon disease prior to the colonoscopy. The perforation caused peritonitis, and he died of the resulting bacteria sepsis.

The perforation did not aggravate his existing health condition.

> His health condition did not aggravate the effect of the perforated cecum and peritonitis.
>
> Colon perforation is a known risk of colonoscopy and would have been noted in the consent form.

(J.A. 93).

United of Omaha denied Plaintiff's claim for accidental death benefits upon initial consideration of the claim and upon administrative appeal. In its final decision letter on administrative appeal, United of Omaha informed Plaintiff as follows regarding its reasoning for denying her claim:

> Ms. Thomas, we understand that Dr. Weedn indicated that Mr. Middleton's death was an accident and the death certificate was amended to reflect this. However, perforation is a known risk of a colonoscopy and therefore, the perforation is not an accident as defined under the [P]olicy. Also, Mr. Middleton died of bacterial sepsis. Under the [P]olicy definition of accident it specifically states accident does not include bacterial or viral infection, regardless of how contracted.
>
> In summary, Mr. Middleton's death was not a sudden, unexpected or unintended event, independent of sickness and all other causes. Therefore, we are unable to provide benefits under the Accidental Death and Dismemberment portion of [the Policy].

(J.A. 102).

Plaintiff originally brought this action in state court, but United of Omaha removed it to federal court as an ERISA case. The parties cross moved for summary judgment. The district court granted summary judgment in favor of United of Omaha. This timely appeal followed.

- 6 -

In an appeal under ERISA, we review the district court's grant of summary judgment in favor of United of Omaha de novo, applying the same standards governing the district court's review of United of Omaha's decision to deny Plaintiff the sought after accidental death benefits under the Policy. Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010). Because the Policy granted United of Omaha, as the plan administrator, "the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy," (J.A. 87), we review United of Omaha's decision to deny Plaintiff the sought after accidental death benefits for abuse of discretion. Williams, 609 F.3d at 629.

The law in the Fourth Circuit is well-settled that, "[u]nder the abuse-of-discretion standard, we will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently." Id. at 630. "To be held reasonable, the administrator's decision must result from a deliberate, principled reasoning process and be supported by substantial evidence." Id. (internal quotation marks omitted). In reviewing the reasonableness of the plan administrator's decision, we consider the following nonexclusive factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000).

We note that Plaintiff relies upon Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228 (4th Cir. 1997) for the proposition that we must review United of Omaha's interpretation of the term "Accident" in the Policy under a modified abuse of discretion standard because United of Omaha's dual roles under the Policy of payor and plan administrator mean that United of Omaha operates under a conflict of interest in making benefit decisions. Plaintiff's reliance on Ellis is behind the times-- indeed, wrong. In Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353 (4th Cir. 2008), we held that the Supreme Court's holding in Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008) required us to abandon our modified abuse-of-discretion standard in conflict-of-interest cases in favor of the normal abuse-of-discretion standard. Champion, 550 F.3d at 358-59. Following Glenn, a plan administrator's conflict of interest

- 8 -

should be viewed "as but one factor among the many identified in Booth for reviewing the reasonableness of a plan administrator's discretionary decision." Williams, 609 F.3d at 631. See also id. at 630 (citing Ellis, 126 F.3d at 233, as example of pre-Glenn Fourth Circuit case applying modified abuse-of-discretion standard in reviewing benefit decision of plan administrator who operated under a conflict of interest).

Our careful review of the briefing, appellate record, and relevant case law, including analysis of the Booth factors, compels us to conclude that United of Omaha did not abuse its discretion in denying Plaintiff the sought after accidental death benefits under the Policy for the death of her husband. The crux of the matter is that United of Omaha acted reasonably in concluding that Middleton's death was not an "Accident" as that term is defined in the Policy. Critically, the administrative record before United of Omaha contained the Post Mortem Examination Report of Assistant Medical Examiner Victor Weedn, M.D. for the Office of the Chief Medical Examiner for the State of Maryland, which reported that: (1) in September of 2009, due to the advanced stage of Middleton's liver disease, "it was decided that he should be referred for liver transplant"; (2) Middleton was subsequently placed on the liver transplant list; and (3) "[h]is workup for the liver transplant included a colonoscopy due to a family history of colon cancer

(he had benign polyps in at least two previous colonoscopies in 2001 and 2006)." (J.A. 116). The administrative record also contained the report of Dr. Reeder who, after reviewing the claim file, stated that "[Middleton] underwent screening colonoscopy to look for colon pathology in preparation for liver transplantation." (J.A. 93). From this evidence, United of Omaha acted reasonably in concluding that Middleton did not die as the result of "a sudden, unexpected and unintended event, independent of Sickness and all other causes." (J.A. 47). Rather, the evidence supports the reasonable conclusion that he died as the result of medical or surgical treatment for liver disease, which cause of death is excluded from the definition of accident under the plain language of the Policy. See Whetsell v. Mutual Life Ins. Co. of New York, 669 F.2d 955, 956 (4th Cir. 1982) (wife not entitled to accidental death benefits as beneficiary of life insurance policy covering husband who died as the result of contracting bacterial endocarditis from infected needle used to administer saline solution intravenously while recovering from cataract surgery because policy expressly excluded from coverage "the risk of death caused or contributed to, directly or indirectly, by disease, by bodily or mental infirmity, or by treatment or operation for disease or bodily or mental infirmity") (internal quotation marks omitted) (emphasis

- 10 -

omitted); see also id. at 957 ("all deaths caused by medical treatment necessarily involve mistreatment . . .").

Plaintiff takes issue with this analysis on the ground that the administrative record lacks substantial evidence from which United of Omaha, as the plan administrator, could reasonably conclude that Middleton's colonoscopy was ordered and performed because of his underlying liver disease. In support, Plaintiff highlights that the administrative record does not contain an actual medical record belonging to Middleton indicating that he was on a liver transplant list at the time of his colonoscopy. Plaintiff also contends that the preoperative diagnosis of "Screening\family history colon cancer" listed on Dr. Doman's colonoscopy procedure report is at odds with the statements in Dr. Weedn's Report to the effect that Middleton underwent the colonoscopy as part of the workup for an anticipated liver transplant.

Plaintiff's position is without merit. Dr. Weedn prepared his report after reviewing first hand Middleton's medical records from five providers spanning more than forty years. There is no evidence in the administrative record to suggest that Dr. Weedn, who is a licensed medical professional employed by the State of Maryland, reported Middleton's medical history inaccurately based upon such review. Moreover, the statements in Dr. Weedn's Report to the effect that Middleton underwent the

colonoscopy as part of the workup for an anticipated liver transplant are not inconsistent with the preoperative diagnosis of "Screening\family history colon cancer" listed on Dr. Doman's colonoscopy procedure report. This is because Dr. Weedn's Report took the screening\family history of colon cancer information into account when he stated that Middleton's "workup for the liver transplant included a colonoscopy due to a family history of colon cancer (he had benign polyps in at least two previous colonoscopies in 2001 and 2006)." (J.A. 116) (emphasis added). In other words, a colonoscopy was indicated prior to Middleton undergoing a liver transplant on account of his family history of colon cancer. In sum, there is no basis upon which to conclude that United of Omaha acted unreasonably in relying upon the portions of Dr. Weedn's Report in which he recounts medical information he learned about Middleton by reviewing first hand Middleton's medical records.

III.

In conclusion, we hold United of Omaha did not abuse its discretion in denying Plaintiff's claim for accidental death benefits under the Policy with respect to the death of her husband. Accordingly, the district court did not err in granting summary judgment in favor of United of Omaha. We, therefore, affirm the judgment below.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED