PLASTERERS' LOCAL UNION NO. 96 PENSION PLAN; Cherie Pleasant, Trustee on behalf of the Plasterers' Local Union No. 96 Pension Plan; James Miller, Trustee on behalf of the Plasterers' Local Union No. 96 Pension Plan, Plaintiffs–Appellees,

v.

Edgar PEPPER; James S. Lertora, Defendants–Appellants,

and

Harold Perry, Defendant.

No. 10–1364.

United States Court of Appeals, Fourth Circuit.

Argued: Sept. 21, 2011.

Decided: Dec. 1, 2011.

**ARGUED:** John Carney Hayes, Jr., Nixon Peabody, LLP, Washington, D.C., for Appellants. Jonathan Rose, Alston & Bird, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Richard S. Siegel, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., for Appellees.

Before DUNCAN and AGEE, Circuit Judges, and DAMON J. KEITH, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Vacated and remanded by published opinion. Judge AGEE wrote the opinion, in which Judge DUNCAN and Senior Judge KEITH concurred.

## OPINION

AGEE, Circuit Judge:

Edgar Pepper and James Lertora (collectively "the Former Trustees"), former trustees of the Plasterers' Local Union No. 96 Pension Plan ("the Plan"), appeal from the judgment of the United States District Court for the District of Maryland in favor of the current trustees of the Plan ("the Current Trustees"). The district court's judgment was based on its finding that the Former Trustees breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., regarding the investment of Plan assets as set forth under 29 U.S.C. § 1104(a)(1)(B) and (C). On appeal, the Former Trustees challenge the district court's determination as to liability, its

method of calculating damages, and the award of attorneys' fees. We conclude that the district court erred as to each of these issues, and therefore vacate the judgment and remand the case for further proceedings.

## I.

The Plan is a multiemployer pension plan subject to the provisions of ERISA and established for the benefit of union members. A Board of Trustees ("the Board") administers the Plan and is comprised of union-appointed and employer-appointed members. All members of the Board are fiduciaries as set forth under §§ 1002(21)(a) and 1103(a).[1] Lertora was a contributing employer to the Plan and its predecessor plan for approximately 30 years, and he served on the Board from the 1960s until 2004. At the time of trial, he was 80 years old and retired. Pepper spent most of his career working in the plastering industry, and served as a trustee from approximately 1990 to 2005. At the time of trial, Pepper was 74 years old and semi-retired.

After a predecessor pension fund plan sustained substantial financial losses in the 1970s and 1980s, the Board implemented the Plan in January 1987. The Board's primary objective was to avoid further losses to the Plan's assets. Toward that end, in February 1992, the Board voted to invest in certificates of deposit ("CDs") "of less than $100,000 to get better rates," investing a maximum of $90,000 in any one issuing bank. (J.A.[2] 3076.) At a meeting held in the fall of 1995, the Board approved a suggestion that part of the Plan's assets "be invested in staggered one and two year term Treasury bills as [CDs] mature." (J.A. 3078.) From that point

---

1. All statutory references are to ERISA under Title 29, unless otherwise noted.

2. Pagination for citations to the record refer to the joint appendix ("J.A.").

through 2005, Plan assets were invested entirely in $90,000 CDs and one-to-two-year Treasury bills.

The Former Trustees and other former Board members testified that the Board's objective from the 1990s forward was "to avoid the risk of losing money" again because they did not "want to lose a dime of the men's money." (J.A. 2433.) They "didn't want to hear [about] loss[es]," and they chose and remained with an investment policy with "guaranteed profit." (J.A. 2465.) With one exception, neither the Former Trustees nor the other Board members recalled discussing alternative investment plans or whether they should create a written investment plan.

The one exception was a June 2001 Board meeting, at which a financial advisor with Morgan Stanley was scheduled to make an investment presentation. Lertora "objected" and the advisor was "asked to leave" without making the presentation. (J.A. 3204.) The Board then had the advisor draft a portfolio proposal setting forth alternative investment strategies. The record does not reflect that the proposal was discussed at subsequent Board meetings, although the Board later unanimously voted not to change investments because "they were pleased with the security of the investments." (J.A. 3200.)

Between 2004 and 2005, the Former Trustees and other Board members were removed from their positions. The Current Trustees then filed a complaint in the district court alleging the Former Trustees and others breached various fiduciary duties regarding the Plan investments.[3]

Eight of the original nine causes of action were dismissed prior to trial and are not at issue in this appeal. The sole remaining cause of action ("Count V") alleged that the Former Trustees violated § 1104(a)(1)(B) for "fail[ure] to research the investment vehicles within which Plan assets were invested to reasonably assure that investment in such vehicles was prudent when measured against investment in other vehicles of similar class," or "to adequately review the investment strategy being executed on behalf of the Plan to ensure that such strategy was reasonable and prudent in relation to the funding requirements of the Plan, administrative costs incurred by the Plan, and real rate of return being earned under such a strategy." (J.A. 39–40.)

During a three-day bench trial, the Former Trustees and other witnesses testified about the Board decisions described above. In addition, the parties each called an expert witness to testify about investment strategy, prudent investment decision-making considerations, and how the actual Plan investments measured against those principles.[4]

The Current Trustees' expert witness, Michael Cairns, testified that a prudent investment strategy would have been a 50/50 mix of S & P 500 and Barclays Capital Aggregate Bond Index investments. He testified that when looking at the period from December 31, 2002 to December 31, 2005, such an investment would have been valued at $432,986.70 more than the actual value of the Plan's investments at the end of 2005.[5] On cross-

---

3. Pepper was a trustee at the time the Board voted to initiate this suit; nonetheless, he voted in favor of filing the complaint.

4. The trial also proceeded on other claims against another defendant, Harold Perry, but nothing relating to that defendant is at issue in this appeal.

5. Prior to permitting Cairns to testify, the court heard the Former Trustees' motion in limine to limit Cairns' testimony about the differential between the amount his recommended "prudent investment" would have generated and the Plan's actual performance. Current Trustees wanted Cairns to be able to

examination, Cairns acknowledged that market performance is unpredictable, and that looking at a six-year period from 1999 to 2005, his proposed investment plan resulted in a valuation differential of only $103,859.01 more than the actual Plan investments. He also testified that his analysis did not depend on "the specific circumstances of" the Plan members, such as their age or the number of Plan members, because be believed those factors were irrelevant as to how to prudently invest a mature fund of the Plan's size. (J.A. 2730–31.)

The Former Trustees' expert, Frederick Taylor, testified that the actual investment policy could be considered a prudent investment strategy given the particular characteristics affecting the Plan, including the declining union membership, that it was a defined contribution plan, the uncertainties of the market in the early and mid–2000s, and the Board's conservative set of objectives. On cross-examination, Taylor agreed that the Plan's assets had not been diversified and that prudent strategy would entail discussing investment objectives and reviewing those investments "periodically." (J.A. 2987–88.)

At the conclusion of the evidence, the district court awarded judgment in favor of the Current Trustees. In ruling from the bench, the court observed that after the Board authorized purchase of the CDs and Treasury bills,

> [T]hat's it. That's the investment strategy, if you will, that goes back to 1991. There's one investigation, one consideration, if you will, if there was any investigation, indeed, and then in 1995 another investment decision. And it isn't really until 2002 with the whole Morgan Stanley transaction that there's even the possibility of considering a different investment strategy. We're talking about seven years from the last so-called investment decision that's made to reconsider and, frankly, the evidence is somewhat perplexing in that regard because it does not appear, notwithstanding what the minutes say, that there was any reasonable consideration given to the Morgan Stanley plan, that the [advisor] didn't really get to make his presentation … and basically—and I'm referring specifically to Mr. Lertora here, he just was not of a mind to consider this plan.

(J.A. 3068.) The court then stated that the Board's "unfavorable" experience with the stock market in the seventies, "seemed to inform all investment decisions for the next … 20, 30 years." (J.A. 3068.)

The district court discussed a variety of steps the Board could have taken to satisfy its duty to investigate investment options, but observed that the Board failed to do anything of that nature, which led it to conclude "there is some suggestion that [they] were not even aware that they had an obligation to diversify and investigate." (J.A. 3062–63.) Consequently, the court held

> there was a failure to investigate, there was a failure to diversify and that cer-

testify using revised amounts for the Plan's actual investment costs that would take a number of factors (e.g., administrative costs, payouts, and contractor contributions) into consideration that had not been included in the values provided and used during discovery. The district court held that Cairns would be limited to testifying using his pretrial calculations because of the unfair surprise and resulting prejudice to the Former Trustees if Cairns were permitted to use the new values.

In light of that ruling, Cairns testified that had the Plan's assets been invested in his proposed 50/50 mix from 2003–2005, the Plan would have been valued at $2,548,049.70. Subtracting the Plan's actual investment return of $2,115,063 resulted in the difference in value of $432,986.70.

tainly the message is that in the future within reasonable periodic spaces, this board of trustees has to investigate what the investment options are, to make sure that their decisions are still viable, which it did not do here.[6]

(J.A. 3070–71.)

Having found a breach of fiduciary duties to investigate investment options and to diversify investments, the district court turned immediately to "what the damages should be." (J.A. 3071.) The district court adopted Cairns' testimony about what a "prudent" investment would have yielded for the three-year period between 2003 and 2005, and concluded that $432,986.70 was the proper amount of damages. In so doing, the court acknowledged that selecting the 2003 to 2005 time frame for calculating damages was "somewhat sort of picked out of the air." (J.A. 3071.) But it defended its decision to do so by noting that the period was "within limitations," "within the causes of action that [the Current Trustees] brought," and included a timeframe during which the Former Trustees had not investigated the Plan's investments. (J.A. 3071–72.) The court thereafter granted the Current Trustees' motion for attorneys' fees and costs

pursuant to 29 U.S.C. § 1132(g)(1), and awarded $337,935.01 in fees and $20,014.47 in costs.

The Former Trustees noted a timely appeal, J.A. 3992–93, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

■ "We review a judgment resulting from a bench trial under a mixed standard of review—factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 427 (4th Cir.2010) (per curiam) (internal quotation marks and alterations omitted). "[I]f the district court's account of the evidence is plausible in light of the record in its entirety, we will not reverse the district court's finding simply because we have become convinced that we would have decided the question of fact differently." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir.2009) (internal quotation marks and citations omitted).

■■ In this appeal the Former Trustees contend the district court erred in holding them liable for a breach of fiducia-

---

**6.** While Count V alleges only a breach under § 1104(a)(1)(B)'s duty to investigate, neither the parties nor the district court did a clear job of distinguishing between the various duties of a fiduciary and addressing those duties (and any breach) separately. The district court's bench ruling framed the issue in terms of a duty to investigate and a duty to diversify, but only discussed in any detail the Former Trustees' failure to investigate investment options. (J.A. 3067–70.) The Former Trustees point to the complaint to assert that the only issue at trial was whether the Former Trustees violated subsection (B)'s duty to investigate. However, Federal Rule of Civil Procedure 15(b)(2) provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in

the pleadings." "Because notice to the defendant of the allegations to be proven is essential to sustaining a cause of action, Rule 15(b) applies only when the defendant has consented to trial of the non-pled factual issues and will not be prejudiced by amendment of the pleadings to include them." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 901 (4th Cir.1996).

It is clear from the record that the parties tried the case and the district court repeatedly framed the issues as involving the duties contained in both subsections (B) and (C), thereby including the separate duties of investigation and diversification. Accordingly, we conclude that the Former Trustees' argument that their alleged failure to diversify was not an issue at trial lacks merit.

ry duty because, although the court found a breach of the duty to investigate, it "made no finding that the [Former Trustees] held objectively imprudent investments." The Former Trustees assert that this additional finding was a necessary condition precedent to the award of damages under § 1109(a) because ERISA fiduciaries are "not liable in damages for losses resulting from investments that were prudent, even assuming the fiduciary's method for selecting the investment was infirm." [7] (Appellants' Opening Br. 21–25.)

We begin by reviewing the relevant statutory provision, § 1104(a), which sets forth the duties of ERISA fiduciaries. Subsection (B) sets out the basic plan fiduciary duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Subsection (C) requires fiduciaries to "diversify[ ] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." § 1104(a)(1)(B), (C).

▮ Although not set out verbatim in the statute, a generally recognized duty of a Plan fiduciary under subsection (B) includes that of investigating and reviewing investment options for an ERISA plan's assets.[8] *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir.2007) ("[I]n common parlance, ERISA fiduciaries owe participants duties of prudence and loyalty. To enforce these duties, the court focuses not only on the merits of a transaction, but also on the thoroughness of the investigation into the merits of that transaction.") (internal quotation marks, citation, and alterations omitted); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir.2004) ("A court's task in evaluating a fiduciary's compliance with [§ 1104(a)(1)(B) ] is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.") (internal quotation marks and citation omitted); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir.1996) ("[T]he courts measure section 1104(a)(1)(B)'s 'prudence' requirement according to an objective standard, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.").

We note that the Former Trustees are not directly challenging the district court's finding that they breached their fiduciary duty to investigate. Indeed, the Former Trustees would be hard-pressed to make that argument. As the district court observed, "there is some suggestion that [they] were not even aware they had an obligation to diversify and investigate."

---

**7.** The Current Trustees assert that this issue has not been properly preserved. (Appellees' Br. 25–34.) We have reviewed the record and conclude that the Former Trustees adequately preserved their argument for appeal. For example, during closing arguments, the Former Trustees cited, inter alia, then-Judge Scalia's opinion in *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 961–65 (D.C.Cir. 1985) (Scalia, J., dissenting in part and concurring in the judgment), supporting their contention that despite a breach of fiduciary duty, if "there's no loss, there's no damage and there's no claim" and that the Plan "didn't suffer any losses, at least while the [Former Trustees] were in charge." (J.A. 3052–53.)

**8.** We use the term "duty to investigate" herein to reflect the subsection (B) duty to investigate, research, and review the options for investment of Plan assets.

(J.A. 2063.) As described above, the Board followed the same investment plan from the mid–1990s until 2005, with almost no review—and arguably no substantive discussion—of other investment options. Nor do we find fault with the district court's finding that the Plan's assets were not diversified. The undisputed evidence adduced at trial showed that the Plan's assets were invested exclusively in CDs of less than $100,000 and one-to-two year Treasury bills. These two specific findings are not contested on appeal.

What is at issue is the noticeable gap in the district court's analysis between its finding that "there was a failure to investigate, there was a failure to diversify" and its summary ruling concluding that the Former Trustees were therefore liable in damages for the difference between the Plan's actual and hypothetical investment values. (J.A. 3070–71.) As discussed below, simply finding a failure to investigate or diversify does not automatically equate to causation of loss and therefore liability. The district court failed to analyze whether the purported losses to the Plan in fact resulted from breaches of duty by the Former Trustees. The finding that the Former Trustees breached their fiduciary duties to investigate and diversify did not establish as a matter of law that the actual investments were imprudent and liability can only attach if in fact that is the case. Accordingly, in order to hold the Former Trustees liable for damages based on their given breach of fiduciary duty, the district court must first determine that the Former Trustees' investments were imprudent. This the district court failed to do, and ERISA requires an independent finding of causation of loss before liability for a breach of a fiduciary duty is incurred.

Section 1109(a) provides that a fiduciary who breaches his duties "shall be personally liable to make good to such plan any losses to the plan *resulting from each such breach....*" (Emphasis added.) Thus, while certain conduct may be a breach of an ERISA fiduciary's duties under § 1104, that fiduciary can only be held liable upon a finding that the breach actually caused a loss to the plan. *See Allison v. Bank One—Denver,* 289 F.3d 1223, 1239 (10th Cir.2002) ("The phrase 'resulting from' indicates that there must be a showing of 'some causal link between the alleged breach ... and the loss plaintiff seeks to recover.'"); *Friend v. Sanwa Bank,* 35 F.3d 466, 469 (9th Cir.1994) ("ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from the breach."); *Willett v. Blue Cross and Blue Shield,* 953 F.2d 1335, 1343 (11th Cir.1992) ("Section [1109(a)] of ERISA establishes than an action exists to recover losses that 'resulted' from the breach of fiduciary duty; thus the statute does require that the breach of the fiduciary duty be the proximate cause of the losses claimed...."); *Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982) (Under § 1109(a), "a causal connection is required between the breach of the fiduciary duty and the losses incurred by the plan."). As the Seventh Circuit observed in *Brock v. Robbins,* 830 F.2d 640 (7th Cir.1987):

> If trustees act imprudently, but not dishonestly, they should not have to pay a monetary penalty for their imprudent judgment so long as it does not result in a loss to the Fund. The entire statutory scheme of ERISA demonstrates that Congress' overriding concern in enacting the law was to insure that the assets of benefit funds were protected for plan beneficiaries. The only possible statutory purpose for imposing a monetary penalty for imprudent but harmless conduct would be to deter other similar imprudent conduct. However, honest but potentially imprudent trustees are

adequately deterred from engaging in imprudent conduct by the knowledge that imprudent conduct will usually result in a loss to the fund, a loss for which they will be monetarily penalized. This monetary sanction adequately deters honest but potentially imprudent trustees. Any additional deterrent value created by the imposition of a monetary penalty is marginal at best. No ERISA provision justifies the imposition of such a penalty.

*Id.* at 647 (internal citation omitted).

█ It is not enough, then, for the district court to have found that a breach of fiduciary duty occurred because the Former Trustees failed to investigate investment options. The Former Trustees can only be held liable for losses to the Plan actually resulting from their failure to investigate. The district court never undertook to determine what losses to the Plan, if any, "result[ed] from" the breaches of fiduciary duty that it identified. Instead, it awarded damages that were calculated based on the assumption that there had been an imprudent investment. But the mere fact that the Former Trustees failed to investigate alternative investment options does not mean that their actual investments were necessarily imprudent ones.[9]

"Even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability [under § 1109(a)] if a hypothetical prudent fiduciary would have made the same decision anyway." *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir.1994). "It is the imprudent investment rather than the failure to investigate and evaluate that is the basis of suit; breach of the latter duty is merely evidence bearing upon breach of the former, tending to show that the trustee *should have known* more than he knew." *Fink*, 772 F.2d at 962 (emphasis in original). Thus, while a failure to investigate is a breach of ERISA fiduciary duty under § 1104(a)(1)(B), causation of loss is not an axiomatic conclusion that flows from a breach of that duty.

It was incumbent on the district court to determine whether the Former Trustees' failure to investigate caused them to make imprudent investments, such that there

**9.** We recognize that the district court was without the benefit of specific circuit guidance on this issue. We had not directly held that a trustee can only be held liable for plan losses that actually resulted from a failure to investigate, but having now considered the issue, we join our sister circuits to so hold. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2nd Cir.1992) ("The last element in this cause of action is proof of a causal connection between the fraud perpetrated and the loss complained of. The same causal connection is required between a breach of fiduciary duty and the loss alleged."); *In re Unisys Savings Plan Litigation*, 173 F.3d 145, 154 (3d Cir.1999) ("we are satisfied that the district court's holdings that [fiduciary] was prudent, and in the alternative, that a hypothetical prudent fiduciary would have made the same investments, are supported by the evidence."); *Bussian v. RJR Nabisco Inc.*, 223 F.3d 286, 300 (5th Cir. 2000) ("ERISA's obligations are nonetheless satisfied if the [investment] selected would have been chosen had the fiduciary conducted a proper investigation"); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995) ("However, a fiduciary's failure to investigate an investment decision alone is not sufficient to show that the decision was not reasonable. Instead, ... in an effort to hold the fiduciary liable for a loss attributable to this investment decision, a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan"); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir.2004) (adopting *Kuper*); *Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1343 (11th Cir. 1992) ("Section 409 of ERISA establishes that an action exists to recover losses that 'resulted' from the breach of a fiduciary duty; thus, the statute does require that the breach of the fiduciary duty be the proximate cause of the losses claimed by plaintiffs.").

was a loss to the Plan for purposes of liability for those losses under § 1109(a). The district court did not undertake that analysis and, in fact, expressly left open the possibility that after satisfying their duty to investigate, the Former Trustees "might well have, although it seems somewhat unlikely, but they have [sic] might well have arrived at the strategy that, in fact, they continued over time, although I think that's unlikely." (J.A. 3069–70.) Because the court never found that the failure to investigate investment options led to imprudent investments or otherwise found that the investments were objectively imprudent, its analysis lacked the essential element of causation. Simply finding a breach of the duty to investigate was insufficient to hold the Former Trustees' liable for losses to the Plan.

Similarly, the district court's finding that there was a failure to diversify is insufficient, in and of itself, to impose liability upon the Former Trustees. For purposes of holding a fiduciary liable for a breach of the duty to diversify, the district court was required to find more than just that the Former Trustees failed to diversify the Plan's assets. As the plain language of subsection (C) provides, plan assets must be diversified "unless under the circumstances it is clearly prudent not to do so." The district court never undertook this second part of the statutory analysis that is required in order to find a violation of subsection (C), which results in liability of the fiduciary. It never discussed any of the evidence presented by the Former Trustees as to why they opted against diversifying Plan assets, nor did it conclude that those reasons were not "clearly prudent." The district court's analysis thus lacked the necessary statutory finding that the failure to diversify caused a clearly imprudent investment under the circumstances. Without the specific finding that the failure of the subsection (C) duty to

diversify caused imprudent investment, the Former Trustees could not be held liable under § 1109(a) for losses to the Plan, if indeed any such losses occurred.

In so much as the district court failed to make the required findings of causation necessary to establish liability for a breach of either the subsection (B) or (C) fiduciary duties, we must remand the case for the court to determine the prudence of the Former Trustees' actual investments. On remand, the court should consider the factors identified in subsections (B) and (C) that are relevant to the determination of prudent conduct. Subsection (B) states that fiduciaries discharge their duties "with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man acting in a like capacity and familiar with such matters would use *in the conduct of an enterprise of a like character and with like aims.*" § 1104(a)(1)(B) (emphasis added). Similarly, subsection (C) requires fiduciaries to diversify investments to minimize the risk of large losses "unless *under the circumstances* it is clearly prudent not to do so." § 1104(a)(1)(C) (emphasis added). In analyzing the prudence of the Former Trustees' actions, the court will need to make whatever necessary factual findings are relevant to determining what "circumstances" informed their decision-making, including the unique circumstances of the Plan. These include, but are not limited to, the Plan's size and type, the Plan members' demographics, and the Board's goal and objectives. We identify these factors as items relevant to the court's analysis, but express no opinion as to what factual findings the court will make or how that will influence its decision as to whether the Former Trustees' investment of the Plan's assets was prudent.

■ Lastly, we note that the court will need to determine who carries the burden

of proving causation. While the plaintiff bears the burden of at least making a prima facie showing that there was a breach of fiduciary duty and that there was some sort of loss to the Plan, the circuit courts of appeals are split as to which party must demonstrate that the loss resulted from the breach. *Compare, e.g., Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir.1998) (holding a plaintiff "must show some causal link between the alleged breach of [the fiduciary's] duty and the loss plaintiff seeks to recover"), *and Kuper v. Iovenko*, 66 F.3d 1447, 1459–60 (6th Cir.1995) (stating "a plaintiff must demonstrate than an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident"), *with McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir.1995) (holding that while the plaintiff bears the initial burden of proving the breach and establishing a prima facie case of loss to the plan's assets, upon doing so, the burden shifts to the defendant fiduciary to prove that the loss was not caused by his breach), *and Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir.1992) ("[O]nce the ERISA plaintiff has proved a breach of fiduciary duty and a prima facie case of loss to the plan or ill-gotten profit to the fiduciary, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by, or his profit not attributable to, the breach of duty."). We express no opinion as to which approach is appropriate, and leave to the district court to consider the parties' arguments upon remand to determine the method most consistent with the relevant statutory provisions.

### III.

Upon remand, should the district court find that the Former Trustees are liable for losses to the Plan attributable to a breach of their ERISA fiduciary duties,

the court would be required to consider the proper measure of damages. For the reasons described below, we find the district court's determination of the amount of damages to have been in error. To aid the parties and the district court in the event they revisit the issue of what, if any, damages exist in this case, we feel it prudent to draw attention to mistakes in the district court's analysis of the calculation of damages. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 n. 2 (4th Cir.2007) ("[O]ur court regularly issues opinions to provide guidance on remand in the interest of judicial efficiency."). Specifically, we conclude that the district court's explanation for awarding damages in the amount of $432,986.70 was insufficient for us to determine whether the award was proper, even if we were able to reach the issue on its merits.

The district court concluded that the Plan suffered a loss of $432,986.70 as a result of the Former Trustees' breach, using Cairns' proposed investment strategy, the pretrial actual value of the Plan's assets, and calculating the difference in value during the 2003–2005 period. The court then stated:

> Now, is that somewhat sort of *picked out of the air* because I picked that period of time as opposed to a six-year period or look retrospectively at the item? *Yes, it is,* but it still is within the framework or even within that confined time there wasn't any appropriate investigation as to what the options were to see whether diversification was appropriate. And within that time line, that's allowing a three-year period for review. It's within limitations. It's within the causes of action that they brought. Had they tried to recover for some other period of time, it might have resulted in other results. But the way the court has decided the case, this is essentially the only period of time that remained

viable under the various theories that were floated by the [Current Trustees] in this case.

(J.A. 3071–72 (emphasis added).)

The district court thus failed to articulate a reasoned basis for awarding damages based on the three-year period of 2003 to 2005.[10] Neither party disputed that the proper measure of damages in this case would be the comparison of what the Plan actually earned with what the Plan would have earned had the assets been prudently invested (assuming that the Plan's actual investment was imprudent). Instead, the dispute centers on what period of time to use as the basis of the damages calculation.[11] That decision is dispositive of the amount of damages in this case because—as set out above using just the arguments and amounts the parties set forth at trial—a three-year versus six-year damages period substantially changed the amount of loss that occurred. Moreover, the Former Trustees argue that using the Plan's Form 5500s and related audit reports, their actual investments outperformed the Cairns' model by $55,000 over a six-year period. If that projection is accurate, no damages were in fact incurred by the Plan and the district court did not address why this calculation was incorrect.

Damages, if any exist, are determined based on the time period to which the investment analysis is applied. Different time frames result in distinctively different damage amounts and must have a clearly articulated and reasoned basis. Picking the 2003 to 2005 time period "out of the air" is clearly not a reasoned basis and constitutes reversible error as a matter of law. At trial and on appeal, both parties proffer bases on which the decision as to a time period could be supported or rejected, for example, by pointing to various ERISA statutes of limitation, which include both three and six-year periods, depending on certain factual findings. On remand, if the district court reaches the issue of damages, the court must articulate the reasoned basis for awarding damages based on a particular time period.

## IV.

A district court "in its discretion may allow a reasonable attorney's fee and

10. Our analysis is limited to the conclusion that the district court erred by failing to articulate the basis for limiting the relevant time frame for the calculation of damages to the three-year period it used. We make no comment on the objective appropriateness of calculating damages based on that time frame, and leave to the district court to consider the parties' arguments and state its reasons for the result it chooses. In addition, we do not rely on or address any of the arguments as to the proper values to be used in calculating damages over any particular period of time. That will also be an issue for the parties to argue and the district court to determine on remand.

11. The Former Trustees' closing arguments drew the district court's attention repeatedly to how important the time frame was to determining the amount of damages. See J.A. 3053 ("[The amount of damages calculated under Cairns' approach] depends entirely on the time frame you select."), 3054 ("[I]n the history of this case, the [Current Trustees] ha[ve] contended for four separate time frames, depending on what suited them at any particularly moment."), 3055 ("[T]his hypothetical comparison between what a portfolio would be worth on a particular day and what it was actually worth is completely dependent on the time frame you select, completely and utterly."), and 3055–56 ("[I]f you start the calculation from 2000 ... you don't get the 432,000, ... [y]ou get 103,000 as the loss—as the 'loss' here, which I respectfully submit is illustrative of how arbitrary and speculative plaintiffs' damages theory is."). Despite having been made aware of the importance of this factor to calculating the appropriate amount of damages, the district court failed to explain the basis for its decision to select one time period over another.

costs of action to either party" in an ERISA action. 29 U.S.C. § 1132(g)(1). In so much as we reverse the district court's determinations as to liability and damages, the award of attorneys' fees and costs is reversed as well. Because the issue of attorneys' fees is likely to arise again on remand regardless of which party prevails, we will briefly address the Former Trustees' argument that the district court improperly analyzed whether such an award was appropriate in this case. *See Goodman,* 494 F.3d at 466 n. 2. The court's decision to award fees is reviewed for abuse of discretion, *Mid. Atl. Medical Servs., LLC v. Sereboff,* 407 F.3d 212, 221 (4th Cir.2005), and its factual findings are reviewed for clear error. *Carolina Care Plan, Inc. v. McKenzie,* 467 F.3d 383, 390 (4th Cir.2006), *overruled on other grounds by Champion v. Black & Decker (U.S.) Inc.,* 550 F.3d 353, 360 (4th Cir.2008).

Following trial, the district court granted the Current Trustees' motion for attorneys' fees and costs, and awarded them $337,935.01 in fees and $20,014.47 in costs ("the fee award"). In deciding whether a fee award was appropriate in this case, the district court relied on the five-factor test this Court adopted in *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017 (4th Cir.1993) (en banc). The court specifically addressed three of the five *Quesinberry* factors and concluded those favored awarding attorneys' fees to the Current Trustees. Specifically, it concluded that the breach of fiduciary duty constituted more than mere negligence or error and demonstrated a sufficient level of culpability to support an award, that the Former Trustees would be able to pay a fee award, and that the Current Trustees brought the litigation for Plan-wide—rather than personal—benefit. In addressing the ability to pay factor, the district court explained:

> It would blink at reality for [the court] to confine its consideration to the obviously modest circumstances of the two individual [Former Trustees] who remain in the case. The parties do not dispute that there is an insurance policy which covers errors and omissions of the [Former Trustees]. Accordingly, this is not a case where [they] will have difficulty paying the award out of their own pockets, nor will the award be paid out of the plan assets.

(J.A. 3923.)

On appeal, the Former Trustees contend that the fee award was improper because, inter alia, the district court erred in concluding the Former Trustees' conduct was sufficiently culpable to warrant the fee award and it clearly erred in finding that the Former Trustees were able to pay such an award. As to this latter factor, the Former Trustees argue they are "older gentlemen of limited means" and that it was error to assume an insurance policy would cover any fee award imposed against them. In reply, the Current Trustees point to an intervening Supreme Court decision—*Hardt v. Reliance Standard Life Ins. Co.,* — U.S. —, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)—to contend the district court did not have to undertake the *Quesinberry* analysis, and that the Current Trustees satisfied the statutory and *Hardt* standard for whether a fee award is appropriate. They also assert the district court did not clearly err in finding the Former Trustees were able to pay the fee award based on insurance policy coverage.

In *Williams v. Metropolitan Life Insurance Co.,* 609 F.3d 622 (4th Cir.2010), we acknowledged that *Hardt* required us "to change our analytical approach to the review of an attorneys' fees award in an ERISA case," and that the Supreme Court's "category of litigants eligible for an attorneys' fees award in an ERISA

action is broader than under our prior standard." *Id.* at 634. *Hardt* held that in deciding to award attorneys' fees, a court must be able to "fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue." 130 S.Ct. at 2158 (internal quotation marks omitted). The Supreme Court specifically noted that its holding did not foreclose circuit courts of appeals from relying on a *Quesinberry*-type analysis as an additional means of reviewing the district court's exercise of its discretion once a claimant is found to be eligible for an award of attorneys' fees under § 1132(g)(1). *Id.* at 2158 n. 8.

■ We held in *Williams* that after conducting the analysis set forth in *Hardt,* courts in the Fourth Circuit should "continue to apply the general guidelines that we identified in *Quesinberry* when exercising [their] discretion to award attorneys' fees to an eligible party." 609 F.3d at 635. The *Quesinberry* factors are:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Quesinberry,* 987 F.2d at 1029.

On remand, the court should use the *Hardt* analysis to first determine whether either party is eligible for an attorneys' fee award, and then analyze the *Quesinberry* factors in exercising its discretion whether to make an award in this case. As always, the *Quesinberry* factors are "general guidelines" and not a "rigid test" for when attorneys' fees are appropriate. *Williams,* 609 F.3d at 636. The district court must ensure that the record supports any factual findings underlying how it weighs the *Quesinberry* factors.

When previously considering those factors, the court clearly erred in finding that an insurance policy would pay the fee award and that the Former Trustees thus were able to pay any such award. Although the record contains scattered references to the *existence* of an insurance policy, the policy is not in the record, nor is there any evidence regarding its terms. Similarly, at oral argument, the parties could point solely to the *existence* of a policy. But there was no evidence to support the court's determination that the Former Trustees would not have to personally satisfy the fee award because there is no evidence in the record as to the terms of the insurance policy. Without information regarding the nature of the coverage—the type and terms of coverage, including policy limits and exclusions—the court could not properly conclude that the Former Trustees were able to pay a fee award.

Should the court be required to determine the appropriateness of attorneys' fees and costs following the remand, it will need to assess the record before it at that time to determine whether such an award is warranted in light of the above considerations. We make no comment on the appropriateness of such an award to either of the parties in this case, but simply note the court's error regarding how the ability to pay factor should be analyzed in light of the court's previous clear error.

## V.

For the reasons set forth above, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*