**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1959**

_____

DAVID GASPER,

        Plaintiff – Appellant,

v.

EIDP, INC., f/k/a E. I. DuPont De Nemours & Company; CORTEVA INC.; THE PENSION AND RETIREMENT PLAN; THE BENEFIT PLANS ADMINISTRATIVE COMMITTEE,

        Defendants – Appellees.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, Senior District Judge.

_____

Argued:  September 10, 2025               Decided:  December 8, 2025

_____

Before BENJAMIN and BERNER, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Keenan wrote the opinion, in which Judge Benjamin and Judge Berner joined.

_____

**ARGUED:**  Bryan Lee Tyson, MARCELLINO & TYSON, PLLC, Charlotte, North Carolina, for Appellant.  Todd David Wozniak, HOLLAND & KNIGHT, LLP, Atlanta, Georgia, for Appellees.  **ON BRIEF:**  Hannah Auckland, MARCELLINO & TYSON, PLLC, Charlotte, North Carolina, for Appellant.  Nishma Patel, HOLLAND & KNIGHT LLP, Charlotte, North Carolina, for Appellee.

_____

BARBARA MILANO KEENAN, Senior Circuit Judge:

David Gasper filed the present action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1024, 1132, against his former employer and retirement plan administrator. Gasper primarily asserts that his monthly annuity payment improperly was reduced by $385.26 to cover the cost of the "qualified joint survivor annuity" (the surviving spouse annuity),[1] which provides his former spouse with reduced monthly payments upon Gasper's death. According to Gasper, the "qualified domestic relations order" (QDRO) entered after his divorce required that any "cost" of the surviving spouse annuity be deducted from his former spouse's portion of the plan benefit and should not result in a reduction to his portion of the benefit. Gasper also seeks "statutory penalties" based on the plan administrator's purported failure to provide Gasper with certain plan documents in a timely manner. The district court awarded summary judgment in favor of the defendants, and Gasper now appeals.

We conclude that the district court properly applied a de novo standard to review the plan administrator's interpretation of the QDRO, and that the court correctly upheld that interpretation under North Carolina law. The plain language of the QDRO permitted, but did not require, that any cost of the surviving spouse annuity be deducted from Gasper's

---

[1] A surviving spouse annuity, referred to in ERISA as a "QJSA," is the primary mechanism to provide survivor benefits to retiring participants, which is required under ERISA. *Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 942-43 (5th Cir. 2000). A QJSA includes two benefits: (1) an annuity for the life of the participant, and (2) a survivor annuity for the life of the surviving spouse not less than 50% of the participant's annuity. *Id.* at 943. ERISA permits former spouses of plan participants to be deemed surviving spouses. *See id.* at 943 n.5; 29 U.S.C. § 1056(d)(3)(F)(i).

former spouse's portion of the retirement benefit. Further, we hold that the district court did not abuse its discretion in concluding that the plan administrator properly calculated Gasper's monthly annuity payment, which included an actuarial adjustment for the surviving spouse annuity that reduced the benefit as a whole. Finally, we hold that Gasper timely received the plan documents to which he was entitled under ERISA. And even assuming, without deciding, that Gasper was entitled to certain historical plan documents that were not timely provided, we hold that the district court did not abuse its discretion in declining to award Gasper allowable statutory penalties. Gasper did not establish that he suffered any prejudice from failing to timely receive those documents, nor did he establish that the plan administrator acted in bad faith in responding to Gasper's requests for documents. We therefore affirm the district court's judgment.

## I.

In December 2010, Gasper and his spouse divorced after 25 years of marriage. In their divorce proceedings in a North Carolina family court (the state court), Gasper's employee retirement plan sponsored by his employer EIDP, Inc. (the plan) was deemed a marital asset. The state court entered a domestic relations order (DRO), which adopted an agreement between the parties regarding certain marital property rights. *See* 29 U.S.C. § 1056(d)(3)(B)(ii). In the DRO, Gasper was identified as the plan "Participant,"[2] and his

---

[2] ERISA defines a "participant" as any employee or former employee who is or may become eligible to receive a benefit from an employee benefit plan. 29 U.S.C. § 1002(7). ERISA defines an "alternate payee" as "any spouse, former spouse, child, or other (Continued)

3

former spouse was identified as the "Alternate Payee." J.A. 634. As set forth in 29 U.S.C. § 1056(d)(3)(B)(i)(1), a DRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan."

Under the terms of the DRO, Gasper would receive a monthly annuity payment upon retirement for his lifetime, and his former spouse would receive a reduced monthly annuity payment during Gasper's lifetime. With regard to the surviving spouse annuity, the DRO stated that Gasper's former spouse "shall be treated as a surviving spouse," who will receive a reduced monthly annuity payment upon Gasper's death for the duration of her life. J.A. 636. And critical to this appeal, the DRO stated that "the Alternate Payee's benefit *may* be reduced as necessary to cover the cost of the [surviving spouse annuity] awarded to Alternate Payee." J.A. 636 (emphasis added).

In April 2013, the plan sponsor appointed Marsha Cauthen-Wilson to review the DRO. After conducting her review, Cauthen-Wilson sent to Gasper a "determination report," stating that the DRO "meets the requirements for a qualified domestic relations order (QDRO)" under ERISA. J.A. 600; *see* 29 U.S.C. § 1056(d)(3)(D)(i) (explaining in part that a DRO cannot be "qualified" if it requires the plan to provide a type or form of benefit that is not provided under the plan). Accordingly, Cauthen-Wilson stated in the report that the plan "will distribute benefits to the alternate payee in accordance with the order and Plan terms." J.A. 600. Cauthen-Wilson also stated in the report that "[a]t the

---

dependent of a participant who is recognized by a [DRO] as having a right to receive . . . benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

4

participant's benefit commencement date, the *total monthly benefit* will be reduced to cover the *cost* associated with the [surviving spouse annuity]." J.A. 601 (emphasis added).

Six years later, in June 2019, Gasper became eligible to receive retirement benefits. Prior to receiving benefits, Gasper was required to "sign" and "certify" his benefit choices in a "pension election authorization form." J.A. 536-37. On that form, Gasper was informed that his monthly benefit would be $3,400.

After signing and certifying the form, Gasper contacted the plan administrator and contended that his monthly benefit should be $3,785.26, not $3,400. According to Gasper, this higher figure was required under the terms of the QDRO.

In response, Gasper received a notice from the plan administrator in October 2019 about how his benefit was calculated. The plan administrator explained that the only "cost" of the surviving spouse annuity is the "actuarial adjustment [made] to convert a benefit payable over the participant's lifetime to a benefit payable over the joint lifetimes of both the participant and [the] surviving spouse." J.A. 562. The notice further explained that "the total benefit was actuarially adjusted to reflect the joint life expectancy requirement of the [surviving spouse annuity], and then the portion of the total benefit payable to the alternate payee was deducted." *Id.* Accordingly, the plan administrator stated that "there is no actual 'cost' [of the surviving spouse annuity] that may be assigned to the alternate payee, and no optional form that would accomplish that result." *Id.* Finally, the plan administrator stated that because "a QDRO may not require a plan to pay a benefit . . . that is not offered under that plan, your court order was qualified disregarding the language addressing 'cost.'" *Id.*

5

In January 2020, Gasper appealed this decision to the "benefit determination review team," which denied his appeal. In June 2020, Gasper verbally requested from the plan administrator the plan documents, including the "summary plan description," that were in effect when the DRO was "qualified" in April 2013. In response, the plan administrator provided copies of the "current" plan and related documents that were in effect in 2020.

In July 2020, Gasper filed a second administrative appeal, which the plan administrator also denied. In its decision, the plan administrator explained that the QDRO "does not state that the Alternate Payee's benefit *must* be reduced in order to cover the [surviving spouse annuity]. Assigning a portion of the cost [*i.e.*, the actuarial adjustment] to both you and your Alternate Payee does not conflict with the QDRO." J.A. 560.

On July 20, 2020, Gasper submitted to the plan administrator his first written request for plan documents. The written request acknowledged that Gasper previously had received certain plan documents. But Gasper asserted that some of the documents were missing certain pages, and that he had not received historical plan documents that were in effect in April 2013. In response to the written request, the plan administrator again sent to Gasper the plan documents applicable in 2020.

Upon receipt of these documents, Gasper asserted that certain plan appendices were missing and again stated that he was entitled to all historical versions of the plan and "summary plan descriptions" for "the entire time period relating to the QDRO determination in [April] 2013." J.A. 544. Gasper contended that the plan administrator had sent only the July 2013 summary plan description, which was not in effect when the

6

QDRO qualification decision was made, and that pages were missing from the July 2011 plan documents.

In 2023, Gasper filed the present action in federal district court against his employer and plan sponsor, EIDP, Inc., and the plan administrator[3] (the defendants). As relevant to this appeal, Gasper asserted two claims: (1) wrongful denial of benefits under 29 U.S.C. § 1132, and (2) a claim for statutory damages for failure to produce documents as required by 29 U.S.C. §§ 1024, 1132.[4] During discovery, the defendants provided Gasper with the historical plan documents applicable in April 2013, including the previously omitted pages from the 2011 plan and the summary plan description from July 2008.

The parties filed cross-motions for summary judgment. After reviewing the record, the district court granted the defendants' motion for summary judgment. The district court held that: (1) applying a de novo standard of review, the plan administrator correctly interpreted the QDRO and did not abuse her discretion in denying Gasper's claim that he

---

[3] The named plan administrator is The Benefit Plans Administrative Committee. Gasper also named Corteva, Inc. as a defendant, which has "assumed responsibility for the plan;" EIDP, Inc. continues to be the plan sponsor.

[4] Gasper also asserted a claim under 29 U.S.C. § 1132(a)(3) for other relief based on a breach of fiduciary duty, but that claim was dismissed and is not at issue in this appeal. Gasper also sought attorneys' fees under 29 U.S.C. § 1132(g)(1), which the district court denied. Based on our conclusion set forth in this opinion that the district court properly award summary judgment in favor of the defendants, there was no basis on which to award Gasper attorneys' fees. *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 633-34 (4th Cir. 2010) (explaining that in an ERISA case, a district court may in its discretion award reasonable attorneys' fees under Section 1132(g)(1) if the party has had some success on the merits (citation omitted)). We therefore hold that the district court did not abuse its discretion in denying Gasper's request for attorneys' fees.

7

was entitled to a larger monthly payment, and (2) the plan administrator was responsive to Gasper's request for documents, Gasper was not prejudiced in the administrative appeals process, and Gasper was not entitled to statutory penalties.  Gasper challenges these conclusions on appeal, and we address them in turn below.

## II.

A party is entitled to summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court construes "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022) (citation omitted).  As we have explained, even in the ERISA context, "summary judgment is appropriate when the evidence is so one-sided that one party must prevail as a matter of law." *Id.* at 959 (citation omitted).

### A.

We begin by addressing Gasper's argument that the district court erred in concluding that the plan administrator properly denied his claim for increased monthly benefits.  Before considering the merits of this argument, we first address the applicable standards of review.

### i.

In appeals under ERISA challenging a plan administrator's decision, we have articulated a general rule that the same standard of review applies to cases heard in the

8

district court and in this Court. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 (4th Cir. 2010). However, our Circuit has not directly addressed whether courts should review de novo, or apply an abuse of discretion standard to, a plan administrator's interpretation of a QDRO adopting the terms of a DRO entered by a state court.

Here, the district court applied a de novo standard in reviewing the plan administrator's interpretation of the QDRO, and we agree with the district court's choice of analytical framework. As recognized by our two sister circuits addressing this issue, a plan administrator's special expertise in interpreting plan provisions, which warrants application of an abuse of discretion standard in reviewing such decisions, does not extend to the interpretation of a state court order memorializing the parties' agreement. *See Matassarin v. Lynch*, 174 F.3d 549, 563-64 (5th Cir. 1999); *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 114-15 (3d Cir. 1994). Instead, the QDRO is a court-approved contract between the parties and, therefore, is subject to ordinary rules of contract interpretation under state law. *See Myers v. Myers*, 714 S.E.2d 194, 198 (N.C. App. 2011). So, we review de novo the language of the QDRO. And we apply an abuse of discretion standard to the plan administrator's exercise of discretionary authority under the plan to make calculation determinations for plan beneficiaries. *Williams*, 609 F.3d at 629; *Cosey v. Prudential Ins. Co.*, 735 F.3d 161, 165 (4th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

ii.

Gasper argues that, under the terms of the QDRO, he and his former spouse agreed that she would bear the cost of the surviving spouse annuity. In making this assertion,

9

Gasper relies on the QDRO language stating that "the Alternate Payee's benefit may be reduced as necessary to cover the cost of the [surviving spouse annuity] awarded to Alternate Payee," Gasper's former spouse. J.A. 636. Gasper contends that use of the word "may" renders the provision ambiguous because, in certain contexts, "may" can be construed as a mandatory term equivalent to "shall." According to Gasper, this ambiguity is resolved by the absence of any reference in the QDRO to a reduction in his portion of the retirement benefit to fund the cost of the surviving spouse annuity. Thus, Gasper maintains that the parties necessarily intended that any cost associated with the surviving spouse annuity would be borne solely by his former spouse's share of the retirement benefit.[5]

Gasper further asserts that the district court should have examined extrinsic evidence of the parties' intent, namely, Gasper's own declaration setting forth his understanding of the QDRO, to resolve the purported ambiguity. And finally, Gasper contends that the plan administrator abused her discretion in calculating his monthly benefit payment at $3,400, rather than $3,785.26. We disagree with Gasper's arguments.

We begin our analysis by consulting familiar principles of North Carolina contract law, which we apply to interpret the language of the QDRO. In North Carolina, when a court interprets a contract, the court's primary function is to ascertain the parties' intention

---

[5] We decline to consider Gasper's argument, raised for the first time on appeal, that the plan administrator's interpretation of the QDRO conflicts with requirements in 29 U.S.C. § 1056(d)(3)(C), which requires a DRO to specify the amount or percentage to be paid to the alternate payee. *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (stating "this court does not consider issues raised for the first time on appeal, absent exceptional circumstances" (citation omitted)).

as expressed in their written instrument. *Lane v. Scarborough*, 200 S.E. 2d 622, 624 (N.C. 1973). If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract considered as a whole. *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009). Only when the terms of a contract are ambiguous are courts authorized to apply rules of construction or to consider extrinsic evidence of the parties' intent. *See Root v. Allstate Ins. Co.*, 158 S.E.2d 829, 835 (N.C. 1968).

Here, the district court concluded that the language of the QDRO was unambiguous, and we agree. Considering the QDRO as a whole, we conclude that the language stating that "the alternate payee's benefit may be reduced as necessary to cover the cost" of the surviving spouse annuity authorizes, but does not require, the plan administrator to allocate the cost of the surviving spouse annuity to the alternate payee's portion of the benefit. J.A. 636.

The QDRO's structure and wording compel this conclusion. Throughout the document, mandatory obligations are denoted by the word "shall." For example, the QDRO states that plan administrator "*shall* distribute benefits to the Alternate Payee in the form of a monthly annuity payable" over Gasper's lifetime, and "*shall* distribute benefits to the Alternate Payee if, as and when the Participant receives a benefit from the Plan, for as long as the Participant lives." J.A. 634-35 (emphasis added). The QDRO further provides that the alternate payee "*shall* be treated as a surviving spouse for a portion of the available" surviving spouse annuity. J.A. 636 (emphasis added).

In contrast, the QDRO does not provide that the alternate payee's benefit "*shall*" be reduced to cover the cost of the surviving spouse annuity. Instead, the QDRO states that

11

her portion of the benefit "*may* be reduced as necessary" to bear that cost. *Id.* (emphasis added). Accordingly, even assuming that "may," in some contexts, can be construed as mandatory, the language of the QDRO as a whole does not support departing from the ordinary, permissive meaning of the term "may." Moreover, the absence of any express reference in the QDRO to the possibility that the cost might instead be allocated to Gasper's portion of the annuity does not alter the unambiguous, discretionary nature of the cost provision. Therefore, we conclude that the disputed terms in the QDRO are unambiguous.[6]

Accordingly, when Cauthen-Wilson issued her determination report qualifying the DRO and stating that "[a]t the participant's benefit commencement date, *the total monthly benefit* will be reduced to cover the cost associated with the [surviving spouse annuity]," she did not misapply the QDRO's terms. J.A. 601 (emphasis added). As the plan administrator later explained in denying Gasper's administrative appeal, "there is no actual 'cost' [of the surviving spouse annuity] that may be assigned to the alternate payee, and no optional form that would accomplish that result." J.A. 562. The summary plan description confirms this understanding, noting that under the surviving spouse annuity, "the reduction in [the participant's] monthly pension is actuarially determined at the time [the participant] retires and start[s] to receive pension payments." J.A. 389-90. The summary plan description further includes as an example a calculation demonstrating that the actuarial adjustment for the surviving spouse annuity is implemented through a reduction in the

---

[6] Based on this conclusion, we additionally hold that the district court did not err in failing to address Gasper's declaration of his intent underlying the QDRO.

12

participant's monthly pension amount.[7] J.A. 390. The plan administrator's understanding of the QDRO thus was consistent with both the QDRO's plain language and the plan's terms governing the cost of the surviving spouse annuity.[8]

After reviewing the record, we also do not find any abuse of discretion in the plan administrator's calculation of Gasper's monthly annuity payment. That calculation reflected her correct understanding of the QDRO language and the other relevant plan terms discussed above.[9] Accordingly, we affirm the district court's award of summary judgment in favor of the defendants on Gasper's claim that he was improperly denied benefits under 29 U.S.C. § 1132.

## B.

We next address Gasper's argument that he was entitled to "statutory penalties" under 29 U.S.C. § 1132(c)(1), based on the plan administrator's failure to timely provide

---

[7] Gasper argues that this example is inapplicable, because it describes a married plan participant, not a divorced plan participant. However, the QDRO plainly states that his former spouse "shall be treated as a surviving spouse" for the QJSA notwithstanding their divorce. J.A. 636.

[8] We acknowledge that a summary plan description only provides communication about the plan terms, but the record shows that the summary plan description is consistent with the plan language. *See* J.A. 238, 241 ("To provide the monthly payment for the spouse," for the survivor annuity, the "employee's calculated pension will be reduced.").

[9] The district court addressed and correctly applied the relevant factors to determine the reasonableness of the plan administrator's calculation of Gasper's monthly annuity payments. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000). We need not repeat the court's analysis here because Gasper's only arguments on appeal in this regard essentially reassert his arguments regarding the meaning of the QDRO and application of the plan terms addressing cost of the surviving spouse annuity.

13

certain plan documents as required by 29 U.S.C. § 1024(b)(4). According to Gasper, there was no dispute that the plan administrator failed to provide him with several documents reflecting various "amendments to the plan" and summaries of "material modifications" for the plan, as well as the July 2008 summary plan description, which was applicable when the QDRO was qualified in April 2013. Gasper submits that the district court abused its discretion in failing to award statutory penalties because the court did not consider the "number" of omitted documents. We disagree with Gasper's argument.

On written request of a plan participant, a plan administrator must provide a copy of the "latest updated summary plan description," and the latest annual report, contract or "other instruments under which the plan is established or operated." *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 652-53 (4th Cir. 1996) (quoting 29 U.S.C. § 1024(b)(4)); *see also Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 225 (4th Cir. 1998). A plan administrator who fails to comply with such a request within 30 days "*may in the court's discretion* be personally liable" to the participant up to $100 per day. 29 U.S.C. § 1132(c)(1) (emphasis added). In exercising its discretion whether to impose a penalty on a plan administrator, a court may evaluate whether the participant was prejudiced by the failure to provide the requested plan documents and may further consider the nature and adequacy of the plan administrator's response to the participant's request. *See Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir. 1996); *see also Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001) (observing that factors to consider include bad faith, intentional conduct, length of delay, number of requests made and documents withheld, and any prejudice to the participant).

14

The record before us reflects that the plan administrator initially responded to Gasper's verbal request in June 2020 for the plan documents currently in effect. As the district court correctly noted, 29 U.S.C. § 1024(b)(4) does not obligate a plan administrator to respond to a participant's requests for plan documents unless that request is made in writing. The plan administrator also timely responded to Gasper's two written requests for plan documents, both of which were submitted following his second administrative appeal.

Gasper nonetheless contends that the plan administrator failed to provide him with several plan amendment documents as well as the 2008 summary plan description. But the district court concluded that even assuming these materials fell within the scope of documents required to be provided under 29 U.S.C. § 1024(d)(4), Gasper was not entitled to statutory penalties.

In considering this issue, we observe that Gasper ultimately received all requested documents after filing the present action, and he has not identified any prejudice resulting from his delayed receipt of the identified documents. As the district court noted, Gasper maintained two administrative appeals without these materials and failed to show that omission of the identified documents impaired his ability to present his claims. Moreover, with regard to the plan terms at issue in this case, the 2008 summary plan description language involving the cost of the surviving spouse annuity was materially identical to the 2013 summary plan description language that Gasper timely received. The record also does not contain any evidence of bad faith or willful misconduct on the part of the plan administrator. We therefore conclude that the district court did not abuse its discretion in

15

declining to impose statutory penalties under 29 U.S.C. § 1132(c)(1). *See Davis*, 97 F.3d at 738; *Devlin*, 274 F.3d at 90.

III.

For these reasons, we affirm the district court's award of summary judgment to the defendants.[10]

*AFFIRMED*

---

[10] We have reviewed Gasper's additional arguments raised in this appeal and conclude that they lack merit.

16